TANKER HYGRADE NO. 18, INC.

v.

The UNITED STATES and Motor Tug Crusader, Inc.,* et al., Third-Party Defendants.

No. 439–73.

United States Court of Claims.

Dec. 17, 1975.

Stephen J. Buckley, New York City, atty. of record, for plaintiff and for third-party defendant Tanker Hygrade No. 24, Inc.; McHugh, Heckman, Smith & Leonard, New York City, of counsel.

Robert P. Whelan, New York City, atty. of record, for third-party defendants Clayton P. Kehoe Towing Co., Inc. and Martin J. Kehoe Towing Co., Inc.; Darby, Healey, Stonebridge & Whelan and Francis J. McCaffrey, Jr., New York City, of counsel.

Rosemary A. Denson, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, for defendant.

Before DURFEE, Senior Judge, and NICHOLS and KASHIWA, Judges.

KASHIWA, Judge:

This is a suit by plaintiff against the United States to recover clean-up costs resulting from an oil spill on one of the navigable waterways of the United States. We deny plaintiff's claim and grant defendant's motion for summary judgment for reasons hereinafter stated.

Jurisdiction of this court over this action is founded upon 33 U.S.C. § 1161(i)(1) (1970), entitled "Control of pollution by oil." [1]

---

* Although appearing as a third-party defendant in this case, Motor Tug Crusader, Inc. did not participate with regard to the subject motion.

1. 33 U.S.C. § 1161(i)(1) (1970) reads as follows:

"(i)(1) In any case where an owner or operator of a vessel or an onshore facility or an offshore facility from which oil is discharged in violation of subsection (b)(2) of this section acts to remove such oil in accordance with regulations promulgated pursuant to this sec-

tion, such owner or operator shall be entitled to recover the reasonable costs incurred in such removal upon establishing, in a suit which may be brought against the United States Government in the United States Court of Claims, that such discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether such act or omission was or was not negligent, or of any combination of the foregoing clauses."

Plaintiff is a corporation organized under the laws of the State of Delaware with offices at Brooklyn, New York. It is a wholly owned subsidiary of Ira S. Bushey & Sons, Inc. (hereinafter Bushey). It was the owner of the tank barge HYGRADE NO. 18, a non self-propelled vessel. On September 30, 1972, the barge HYGRADE NO. 18, loaded with a cargo of No. 6 fuel oil, was enroute from Rensselaer, New York, to Ticonderoga, New York, pushed by the tug JOAN KEHOE, owned and operated by Clayton P. Kehoe Towing Company, Inc., a company independent and not connected with Bushey in any way. At about 11:45 p. m. on that day the side of the barge HYGRADE NO. 18 came into contact with a rock formation at the bank of the New York State Barge Canal, as a result of which part of her cargo was discharged through a hole caused by that contact. Plaintiff alleges in its petition that, pursuant to the provisions of 33 U.S.C. § 1161 (1970), it promptly undertook to remove the discharged oil from the navigable waters of the United States of America and caused the same to be accomplished at a reasonable cost to plaintiff of $152,500. Plaintiff further alleges generally that the said discharge was caused solely by an act or omission of a third party or third parties. In its pre-trial submission, plaintiff has taken an alternative position that the tug JOAN KEHOE pushing barge HYGRADE NO. 18 caused the spill or that the tug SENECA, owned by Motor Tug Crusader, Inc., a Bushey subsidiary, was the cause of the oil spill. Plaintiff prays in its petition that by reason of the foregoing and pursuant to the provisions of 33 U.S.C. § 1161(i)(1) (1970) plaintiff is entitled to recover from the United States the sum of $152,500.

Plaintiff sued the United States as a sole-party defendant. The United States filed an answer denying liability and filed a timely third-party petition against the following third-party defendants:

1) Motor Tug Crusader, Inc.

2) Clayton P. Kehoe Towing Company, Inc.

3) Martin J. Kehoe Towing Company, Inc.

4) Tanker Hygrade No. 24, Inc.

The United States claims in the third-party petition:

That if any judgment be entered against the United States of America in favor of plaintiff Tanker Hygrade No. 18, Inc., herein, that a judgment be awarded in favor of the United States of America and against third-party defendant Motor Tug Crusader, Inc., third-party defendant Clayton P. Kehoe Towing Company, Inc., third-party defendant Martin J. Kehoe Towing Company, Inc., and third-party defendant Tanker Hygrade No. 24, Inc., requiring each of said third-party defendants, jointly and severally, to pay to the United States of America the amount of any such judgment and to indemnify and exonerate the United States of America against any and all liability herein; * * *. [At pp. 4–5.]

All of said third-party defendants were duly served and each of them answered the third-party petition of the United States, denying any liability. In addition to answers, the two Kehoe companies have filed a joint motion for summary judgment. We shall refer to this joint motion at the end of this opinion.

The United States in the meantime filed a motion for summary judgment against plaintiff, Tanker Hygrade No. 18, Inc. We quote from a memorandum attached to said motion (at pp. 2–4), stating the grounds for said motion:

Plaintiff, Tanker Hygrade No. 18, Inc. (hereinafter Hygrade 18) has filed its action under 33 U.S.C. 1161(i) of the Federal Water Quality Improvement Act of 1970 (Pet. Paragraph 1).

Title 33 U.S.C. 1161(i) provides in part:

"In any case where an owner or operator of a vessel * * * from which oil is discharged in violation of subsection (b)(2) of this section acts to remove such oil * * * such owner

or operator shall be entitled to recover the reasonable costs incurred in such removal upon establishing * * * that such discharge was caused *solely by an act or omission of a third party* * * *." (emphasis added)

In its pretrial submission Hygrade 18 contends that the tug JOAN KE-HOE was the cause of the oil spill (Pretrial Submission 1(c)(1). Title 33 U.S.C. 1161(i) requires that plaintiff prove that the discharge was *caused solely* by an act or omission of a *third party*.

The cause of the September 30, 1972 incident has already been decided in *United States v. Ira S. Bushey & Sons, Inc.*, 363 F.Supp. 110, 115 (D.Vt.1973), aff'd 487 F.2d 1393 (2d Cir. 1973), cert. denied 417 U.S. 976 [94 S.Ct. 3182, 41 L.Ed.2d 1146] (1974), and the findings in that case clearly preclude any recovery by plaintiff under 33 U.S.C. 1161(i).

*Bushey* found that the barge BLUE LINE 107, push towed by the tug SENECA, caused the oil spill from HYGRADE 18 on September 30, 1972, in the Lake Champlain Canal, *Bushey*, pp. 115–116. However, HYGRADE 18 now comes to the Court of Claims attempting to relitigate these findings and asserts that the spill was caused solely by the JOAN KEHOE. Query why HYGRADE 18 does not assert that the SENECA or BLUE LINE 107 caused the spill and support its claim with the findings in *Bushey*, pp. 115–116, 119.

The answer is glaringly revealed in *Bushey* where the court found that the public interest to preserve the environmental integrity of Lake Champlain—threatened by numerous Bushey oil spills—dictated that the corporate veil of Bushey should be pierced. *Bushey*, p. 119. The court found that the corporations owning HYGRADE 18, the SENECA and BLUE LINE 107 are wholly-owned subsidiaries of the same parent company, Ira S. Bushey & Sons, Inc., and that those three vessel-owning corporations were "mere corporate shells established for purposes of avoiding tort liability to the parent for the acts of the subsidiaries which are the alter egos of Bushey." *Bushey*, p. 119.

Under 33 U.S.C. 1161(i), HYGRADE 18 would have to prove that the spill was caused solely by an act or omission of a third party in order to be reimbursed for the money spent for cleaning up the oil spill. Since the SENECA and BLUE LINE 107 are not third parties in relation to HY-GRADE 18 because of their "alter ego" relationship to Bushey, this action must fail.

On collateral estoppel we quote from *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 593, 94 S.Ct. 806, 818, 39 L.Ed.2d 9 (1974), a recent case:

Collateral estoppel applies "where the second action between the same parties is upon a different cause or demand * * *. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' *Cromwell v. County of Sac*, [94 U.S. 351,] [353, 24 L.Ed. 195]. And see *Russell v. Place*, 94 U.S. 606 [24 L.Ed. 214]; *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48 [18 S.Ct. 18, 27, 42 L.Ed. 355]; *Mercoid Corp. v. Mid-Continent Co.*, 320 U.S. 661, 671 [64 S.Ct. 268, 273, 88 L.Ed. 376]. Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. *But matters which were actually litigated and determined in the first proceeding cannot later be relitigated." Commissioner of Internal Revenue v. Sunnen*, 333 U.S. [591], at

597–598 [68 S.Ct. 715, at 719, 92 L.Ed. 898]. [Emphasis supplied.]

We shall first quote the district court's finding number 28 from *United States v. Ira S. Bushey & Sons, Inc.*, 363 F.Supp. 110, 115–116 (D.Vt.1973), affirmed in toto without opinion in 487 F.2d 1393 (2d Cir. 1973), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974):

28. On September 30, 1972, while under way between Locks 9 and 11 of Lake Champlain Canal, barge Hygrade No. 18, owned by the Tanker Hygrade No. 18, Inc., a wholly-owned Bushey subsidiary, was struck by the tank barge Blue Line No. 107 being pushed by the tug Seneca, both owned by corporations which are wholly-owned by Bushey subsidiaries. The resulting collision caused the Hygrade No. 18 to strike rocks on the bottom of the canal which caused No. 6 fuel oil to leak from Hygrade No. 18 into the canal. The canal flows north into Vermont waters of Lake Champlain, but there is no evidence that the oil spilled in the canal did so flow. But Hygrade No. 18 proceeded into Lake Champlain and toward Ticonderoga after the ramming and oil was seen to bubble out of it into the lake.

(A) Before the collision, the captain of the tug Kehoe, which was pushing tank barge Hygrade No. 18, was in radio communication with the captain of the tug Seneca, which was pushing the tank barge Blue Line No. 107. The captain of the tug Seneca agreed to hold back at Bray Terminal, which was an area wide enough for the vessels to pass. After agreeing to do this, the captain of the tug Seneca disregarded the agreement, and proceeded about three-quarters of a mile southerly. As the tug and barge approached each other, the captain of the Kehoe brought his tug and barge to a halt and he attempted by radio to warn the Seneca and Blue Line No. 107 not to pass. The captain of the Seneca did not answer the radio warning, and the barge Blue Line No. 107 hit the Hygrade No. 18 while attempting to pass, resulting in the damage to the Hygrade No. 18 and a subsequent oil spill.

(B) The Hygrade No. 18 spilled between 200 and 1,145 gallons of No. 6 oil along some six miles of the canal and also in the Vermont waters of Lake Champlain.

(C) The spill from Hygrade No. 18 was such as to cause defendant Bushey to expend the sum of $150,000 in cleaning the Champlain Canal of No. 6 oil.

There is no question that the oil spill referred to in finding number 28 is the identical spill the clean-up expenses of which are the subject matter of this action in this court. Hereafter, we shall refer to this finding as finding 28.

We further quote the following finding of the district court at page 119 of its opinion:

As previously held, this court has jurisdiction of the parties and venue in the District of Vermont is proper. *Public policy dictates that the veil of Bushey's and Spentonbush's separate corporate entities be pierced, since these corporations wholly own, control, manage, operate and in all ways supervise the operations of the many subsidiaries of Bushey.* See *United States v. Ira S. Bushey & Sons, Inc.*, No. 6380 (D.Vt., Oct. 11, 1972) (unpublished opinion on motions to sever and transfer). *The subsidiaries are mere corporate shells established for purposes of avoiding tort liability to the parent for the acts of the subsidiaries which are the alter egos of Bushey and Spentonbush.* Cf. *United States v. Parfait Powder Puff Co.*, 163 F.2d 1008, 1010 (7th Cir. 1947), cert. denied, 332 U.S. 851, 68 S.Ct. 356, 92 L.Ed. 421 (1948). Injunctive relief against only one or a few of the subsidiaries could easily be circumvented by the parent, with the assistance of the similarly wholly owned Spentonbush, simply by using other subsidiary corporations to make petroleum deliveries to Vermont. The public interest in preserving the

environmental integrity of Lake Champlain, the sixth largest lake in the country and a jewel of nature, is sufficiently paramount that the parent corporation, Bushey, which profits from the operations of its alter-ego subsidiaries, should be accountable for any violation or continuing threat of violations to that integrity. [Emphasis supplied.]

This finding is not numbered in that it is in the opinion portion of the decision. We shall hereafter refer to the foregoing finding as the piercing-corporate-veil finding. The district court based it on additional findings numbered 1 to 9.[2]

Defendant's position is that since under § 1161(i)(1) plaintiff cannot recover unless it proves that the discharge was caused *solely by an act or omission of a third party*, this case should be summarily decided in defendant's favor because collateral estoppel prevents plaintiff from relitigating both finding 28 and the piercing-corporate-veil finding.

Plaintiff in response to defendant's motion for summary judgment argues that finding 28 was not necessary and essential to the resulting judgment of the district court which granted injunctive relief. It states that findings of the district court, taken as a whole, led to the district court's decision to issue an injunction but a finding with respect to each incident by itself was not necessary and essential to the district court's decision to grant injunctive relief. Plaintiff cites and relies on *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir. 1970), wherein the court in a petition for discharge in bankruptcy, proceeding with relation to a prior judgment adjudicating petitioner bankrupt, stated:

This case presents a unique issue in the law of collateral estoppel which has not been analyzed exhaustively by any court. When the prior judgment rested on several (here three) independent, *alternative grounds*, is that judgment conclusive as to the facts which were necessarily found in order to establish only one separate ground? We conclude that on the facts before us it is not.

2. The district court's findings numbered 1 to 9 are as follows:

"1. Defendant Ira S. Bushey & Sons, Inc. (hereinafter "Bushey"), is a New York corporation having offices at 764 Court Street, Brooklyn, New York.

"2. Spentonbush Transport Service, Inc. (hereinafter "Spentonbush"), is a wholly-owned subsidiary of Bushey and a New York corporation having offices at 500 Fifth Avenue, New York, New York.

"3. The directors of Bushey and the directors of Spentonbush are the same persons, Francis B. Bushey, Ira S. Bushey and Raymond J. Bushey. The officers of Bushey and Spentonbush are substantially the same.

"4. Defendant Bushey wholly owns approximately 40 corporations, each of which owns vessels used in the transportation of liquid cargoes; of these approximately 25 tugs and barges are capable of operating in the Vermont waters of Lake Champlain, a navigable water of the United States, and most of these vessels do in fact operate in Vermont waters. Among such vessels are Tanker Hygrade No. 8, owned by defendant Tanker Hygrade No. 8, Inc., and the tug Carmelite owned by defendant Tug Carmelite Corporation.

"5. Spentonbush is and has been for a number of years engaged in the business of the solicitation of orders for transportation of liquid cargoes by water, and of arranging for performance of such transportation by vessels, and it gives preference to vessels of Bushey subsidiaries in arranging water transportation contracts.

"6. Spentonbush collects transportation charges for such water transportation, deducts a commission and remits the balance to the owners of the particular tank barge and tug boat involved.

"7. Since December, 1970, crews used by vessels owned by Bushey subsidiaries have been hired and employed either by Spentonbush or by Hygrade Operators, Inc., a wholly-owned subsidiary of Bushey.

"8. None of the wholly-owned, vessel-owning, corporate subsidiaries of Bushey operating in Lake Champlain employs its own crew, its own accounting personnel, or any other employees except for its officers. The officers and directors of each subsidiary corporation, except Spentonbush, are identical to the officers and directors of defendant Bushey.

"9. The net profit or surplus from the operations of Spentonbush and other wholly-owned Bushey subsidiaries are remitted to Bushey by way of corporate dividends." [At pp. 111–112.]

It is well established that although an issue was fully litigated and a finding on the issue was made in the prior litigation, the prior judgment will not foreclose reconsideration of the same issue *if that issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment.* Norton v. Larney, 266 U.S. 511, 517, 45 S.Ct. 145, 69 L.Ed. 413 (1925); *Fibreboard Paper Products Corp. v. East Bay Union of Machinists, Local 1304,* 344 F.2d 300, 306 (9 Cir. 1965); *United States v. Rodiek,* 117 F.2d 588, 593 (2d Cir. 1941), aff'd, 315 U.S. 783, 62 S.Ct. 793, 86 L.Ed. 1190 (1942); Restatement of the Law of Judgments § 68, Comment o (1942); 1B Moore, Federal Practice ¶ 0.443[5] at 3919 (1965). The reason for this rule is twofold. First, the decision on an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues, since a different disposition of the inessential issue would not affect the judgment. *Irving Nat'l Bank v. Law,* 10 F.2d 721, 724 (2d Cir. 1926) (L. Hand, J.). * * * [At pp. 104–105, emphasis supplied.]

\* \* \* \* \* \*

We therefore hold that when a prior judgment adjudicating one a bankrupt rests on two or *more independent alternative grounds,* it is not conclusive as to issues in trial objections to discharge which issues were necessarily found in order to establish only one of those grounds. In so holding, we think distinguishable the only other case we have found in this circuit which ruled on a somewhat similar issue, *Kessler v. Armstrong Cork Co.,* 158 F. 744 (2d Cir. 1907), cert. denied sub nom. *Sexton v. Armstrong Cork Co.,* 207 U.S. 597, 28 S.Ct. 262, 52 L.Ed. 357 (1908). To the extent that *Patterson v. Saunders,* 194 Va. 607, 74 S.E.2d 204 (1953), *Sheldon v. Edwards,* 35 N.Y. (8 Tiffany) 279 (1866), Annot., 133 A.L.R. 840, 846 (1941) are to the contrary, we decline to follow them.

[At pp. 106–107, footnotes omitted, emphasis supplied.]

In *Stebbins v. Keystone Insurance Co.,* 156 U.S.App.D.C. 326, 481 F.2d 501, 507–508 (1973), the court of appeals, with relation to *Halpern v. Schwartz, supra,* after stating that it was the only case in the past 20 years to consider the question, stated as follows:

Collateral estoppel has shown itself to be an extremely useful device for reducing the crush of litigation in the trial courts, and it goes a long way toward eliminating inconsistent decisions in cases with identical fact patterns and a common party. In part for these reasons, the recent trend has been to broaden the scope of its application. *Halpern,* of course, runs against this current. The *Halpern* rule was evolved in the context of a bankruptcy case. We need not decide whether the *Halpern* approach is sound if applied as a general rule to a wide range of matters. * * * [Footnote omitted.]

But the court of appeals permitted the *Halpern* rule to apply only to very narrow facts of the case with relation to a matter which was curable anyway.

As in *Stebbins v. Keystone Insurance Co., supra,* we need not decide whether the *Halpern* approach is sound because the rule in *Halpern* is not applicable under the facts of this case. *Halpern* limits its application to a prior judgment resting on two or more independent, *alternative* grounds. In *Halpern* the three grounds were clearly in the alternative but in the present case the nine Bushey-connected oil spills between August, 1967, and November, 1972, were not for alternative consideration, instead they were offered and received by the district court for the cumulative effect. The district court found that the cumulative effect justified the issuance of the injunction. Findings 48, 61, 62, and 63 of the district court clearly support our cumulative-effect view:

48. During the past five years, the nine oil spills in Vermont waters of

Lake Champlain, involving Bushey controlled vessels, have either damaged, or presented a substantial risk of damage, to Vermont beaches, a major municipal water supply, and to waterfowl and fish, particularly in the Burlington-Shelburne harbor areas.

\* \* \* \* \* \*

61. Due to the numerous oil spills involving defendants Bushey and Spentonbush, and due to the violations of the Refuse Act by Bushey and Spentonbush, as appears from the records in the United States District Court for the District of Vermont, the court finds that the Government is entitled to equitable relief against defendants Bushey and Spentonbush.

62. The court finds that the numerous oil spills that have occurred together with the continuation of slack operations by defendants as above described poses a continuing nuisance threatening the general public, wildlife, lakefront property owners and the environment of Lake Champlain and its shore lines.

63. The court finds that the numerous past oil spills that have occurred, the continuation of slack operations by defendants and the damaging effects of oil spills cause a continuing threat of irreparable harm to the navigable waters of the United States and hence to the plaintiff. [*Bushey, supra,* at 117, 119.]

With relation to the oil spill involved in this case, described in finding 28, the oil which spilled was No. 6 fuel oil. The court in finding 19 described the difference in effect on water between more volatile oils such as jet fuel as compared to heavy heating oil as follows:

19. The effect of an oil spill on water varies with the kind of spill—jet fuel evaporates quickly while heavy heating oil does not—and environmental conditions; with certain kinds of oil under certain conditions, as those of turbulence, shear forces at the oil-water interface may prevail causing an influx of oil into the water column rather than mere confinement of it to the surface where it may be more easily contained. [*Bushey, supra,* at p. 113.]

Of the nine oil spills listed, six were of the quickly evaporating type, such as gasoline, kerosene, or jet fuel; the remaining three spills covered by findings 25, 26, and 28 were of the heavy heating oil type. Of all nine spills it appears from the findings in finding 25 that the spill of the heavy heating oil in finding 25 was the most damaging. The oil spill in finding 28, the spill in issue herein, was of the heavy oil type, as in finding 25, causing with the other spills and the slack operations by the Bushey organizations a continuing threat of irreparable harm to the navigable waters of the United States. Plaintiff is estopped to relitigate the cumulative effect of findings in findings 48, 61, 62, and 63.

The inexcusable operation of the tug SENECA, whereby two of the Bushey barges collided as found in finding 28, was the very type of "slack operation" the district court was referring to in findings 62 and 63 above quoted. In finding 27 the slack operation involved the officer in charge being under the influence of alcohol. These slack operations in findings 27 and 28 cumulatively with the other seven described operations caused a continuing threat of irreparable harm to the navigable waters involved. Plaintiff is estopped from relitigating the cumulative effect found by these slack operations in findings 48, 61, 62, and 63.

With relation to cumulative findings in *Hawes v. Contra Costa Water Co.,* 11 F.Cas.No.6,235 p. 862 (C.C.S.D.Cal.1878), *aff'd, Hawes v. City of Oakland,* 104 U.S. 450, 26 L.Ed. 827 (1882), which involved the effect of a decree of a State court as an authoritative construction of a state statute, binding upon a Federal court, the court stated:

\* \* \* Both grounds were distinctly and squarely presented by the record, and relied on, and the latter more especially fully argued by counsel. The court might just as well have

rested its decision on the second ground, if found good, without noticing the first, as upon the first without noticing the second. Or it might, if thought proper, have decided both, as it did. It is a matter of almost everyday occurrence that the record presents two or more points, either of which, if sustained would determine the case, and the court decides them all. In such case it can no more be said that one rather than the other is obiter. * * * [At p. 865.]

See, also, *First Nat'l Bank v. Covington*, 129 F. 792 (C.C.E.D.Ky.1903), *aff'd*, 198 U.S. 100, 25 S.Ct. 562, 49 L.Ed. 963 (1905), wherein the court stated:

* * * The fact that the judgment of a court in a suit might have been based upon another ground than that on which it was actually based does not prevent the determination that such ground existed being conclusive as to its existence in a subsequent suit between the same parties, if its existence was in issue in the former suit and properly formed the basis of the judgment therein. * * * [At p. 796.]

The cumulative effect view rule is well put in Freeman, Judgments § 698 (5th ed.), wherein it is stated:

* * * there is a difference between a finding or adjudication which is immaterial and one which is material, though perhaps unnecessary in view of other findings. The mere fact that the court goes further than is absolutely necessary to sustain its judgment in determining material issues presented to it does not prevent such issues from becoming res judicata.

We hold as follows:

1) Defendant's motion for summary judgment is granted and plaintiff's petition (hereafter petition-in-chief), including plaintiff's alternative positions in its pre-trial submissions, is dismissed;

2) The contingent claims of the United States against the two third-party defendants Motor Tug Crusader, Inc. and Tanker Hygrade No. 24, Inc. are also dismissed because of the dismissal of the petition-in-chief in (1) above;

3) With relation to the joint cross motion for summary judgment by the two third-party defendants Clayton P. Kehoe Towing Company, Inc. and Martin J. Kehoe Towing Company, Inc.:

a. that portion requesting summary judgment dismissing the petition-in-chief is allowed by reason of the dismissal of the petition-in-chief in (1) above and

b. that portion requesting dismissal of the impleading petition is allowed by reason of the dismissal of the petition-in-chief in (1) above.