Plaintiff, a member of the Crow Tribe of Indians, seeks $104,000 in damages against the United States for breach of trust and other fiduciary duties. In 1955, plaintiff was issued a fee patent for 1,040 acres of land in Montana by the Bureau of Indian Affairs. Plaintiff immediately sold *893 the land to a land company for less than its appraised value. Since the sale to the land company at the time was either void or voidable, plaintiff alleges the United States was obligated as a trustee to sue to recover the land for her. The case is before us on defendant’s motion to dismiss or for summary judgment on the grounds plaintiffs suit is barred by the statute of limitations, res judicata, lack of jurisdiction and failure to state a claim upon which relief can be granted. We conclude that plaintiffs prior suit and the decision therein, Dillon v. Antler Land Company of Wyola, et al., 341 F. Supp. 734 (D. Mont. 1972), aff'd., 507 F. 2d 940 (9th Cir. 1974), cert. denied, 421 U.S. 992 (1975) (hereinafter "Dillon”), bars plaintiffs present suit under principles of res judicata and collateral estoppel. We therefore grant defendant’s motion and dismiss the petition.
There is no material dispute concerning the facts. The case concerns 1,040 acres of grazing land in Montana, once part of the Crow Indian Reservation. The United States allotted the land to Dillon in 1923 and 1924 by trust patent under the General Allotment Act, 25 U.S.C. § 348. Plaintiffs father first managed the land for her and leased some of it to Matt Tschirgi. Tschirgi later incorporated under the name of Antler Land Company. In 1949, plaintiff received competency status which allowed her to handle her own leasing negotiations with Tschirgi and she immediately increased her rental income per acre. Tschirgi, however, took advantage of plaintiffs need for money and utilized a scheme prevalent on the reservation whereby leases were made for five years with rentals payable in whole or in part in advance. In 1955, when plaintiff needed money, Tschirgi refused to advance any except on the condition that plaintiff apply for a fee patent so that he might purchase the land from her. Tschirgi gave plaintiff instructions as to how she should prepare her fee patent application and on May 21, 1955, plaintiff entered into a written contract to sell the land to Antler Land Co. for $7,280. Notwithstanding the purchase price of $7 per acre in the contract, Tschirgi promised to pay plaintiff whatever the appraised value of the land turned out to be. Dillon, supra, 341 F. Supp. at 738. On August 23, 1955, the land was appraised at $10,400, or $10 per acre.
*894 Plaintiffs application for a fee patent was approved, a patent was issued on September 19, 1955, and delivered to plaintiff on October 3, 1955. On October 6, 1955, she executed and delivered a warranty deed to Antler Land Co. Plaintiff, however, asked to know the appraised value of the property which Tschirgi refused to reveal, insisting plaintiff was bound by the contract of May 21, 1955, with its price of $7 per acre. Tschirgi was adamant in his refusal to pay plaintiff the land’s appraised value, compelling plaintiff to turn to other individuals for help, including the Crow Agency Superintendent and the Field Solicitor, without success.
Two important factors surrounding plaintiffs land sale to Antler Land Co. made the transaction both void and voidable. First, the contract of May 21, 1955 was made while the land was still in trust status and therefore void pursuant to 25 U.S.C. § 348. While Tschirgi could have freely negotiated with plaintiff for sale of the land after a fee patent was issued, he could not do so on the strength of the void contract of May 21, 1955. If plaintiff conveyed the land under the mistaken impression she was bound by the May 21, 1955 contract, the deed was voidable.
Second, section 2 of the Crow Indian Allotment Act of June 4, 1920, ch. 224, 41 Stat. 751, applicable to the lands in question, provides that any conveyance of land by a Crow Indian, whether holding by either a trust patent or a patent fee, to a person, company or corporation owning grazing and agricultural lands above a certain acreage limitation shall be void. On the date of the conveyance of plaintiffs lands to Antler Land Co., the company owned lands exceeding the specified acreage limitation. The conveyance was therefore void.
Believing she had been wronged, Dillon contacted several attorneys and U.S. Government officials with the hope of having the United States sue to recover the land and quiet title in trust for her. She was, however, unsuccessful in her efforts and finally on July 20, 1970, plaintiff filed an action in United States District Court for the District of Montana against Antler Land Co., other related companies, and the United States.
Plaintiffs action in the District Court sought to have the contract of May 21, 1955 and the deed to Antler Land Co. *895 declared void on the two grounds mentioned above and for reasons of fraud. Dillon’s claim relating to the United States maintained the Government, by failing to recover the lands for Dillon, breached a duty to plaintiff required by 25 U.S.C. § 185 which provides, inter alia, that when an Indian is allotted land, "the agent and superintendent of such Tribe shall take such measures, not inconsistent with the law, as may be necessary to protect such Indian in the quiet enjoyment of the lands so allotted to him.”
With respect to the issue of the validity of the land conveyance, the District Court on motion for summary judgment determined that the conveyance from Dillon to Antler Land Co. was indeed void, for the reasons discussed above. Dillon, 341 F. Supp. 734 at 739-41. But even though the conveyance was void, because Antler Land Co. and its successors in interest had met all the requirements of Montana’s adverse possession statute, "defendants [i.e. Antler Land Co.] have acquired a title by adverse possession as against the plaintiff [Dillon], 341 F. Supp. at 743.
As to the issue of the United States’ alleged duty to sue on plaintiffs behalf, the District Court rejected plaintiff Dillon’s contentions. The District Court first noted that the issuance of a fee patent to Dillon had specific legal ramifications:
The issuance of the fee patent had a broader effect than merely to free plaintiff to sell her land — it freed the United States from its trustee duties and altered the relationship of the land and plaintiff to the State of Montana. 341 F. Supp. at 741.
A decision of the United States to sue for Dillon was one solely within the discretion of the Attorney General of the United States and the court was without power to compel the exercise of such discretion.
The District Court also rejected Dillon’s argument that 25 U.S.C. § 185, supra, imposed a duty upon the United States to litigate on her behalf. The District Court succinctly stated:
25 U.S.C. § 185 does not, in light of the previously quoted language from the General Allotment Act and the Crow Act, continue forever the trusteeship of the United States over the fee lands of emancipated Indians and does not impose a duty in the United *896 States to litigate cases arising out of the dealings by Indians with their patent-in-fee lands, (footnote omitted) 341 F. Supp. at 742.
In view of the above, it is clear the issue of whether the United States had a duty under 25 U.S.C. § 185 to sue on Dillon’s behalf was squarely addressed by the District Court. Moreover, in a motion for reconsideration before the District Court plaintiff has conceded that: "Petitioner [Dillon] did suggest that in determining whether the United States has a duty to litigate under 25 U.S.C. § 185, it should consider the fiduciary responsibility to its Indian wards.”
Dillon appealed the District Court’s decision which was affirmed. Dillon, 507 F. 2d 940 (9th Cir. 1974), cert. denied, 421 U.S. 992 (1975).
Dillon filed the instant action in the Court of Claims on August 4, 1977. Of course this suit concerns the same conveyance of property by the same individual, Dillon, as was before the District Court. Defendant herein, the United States, was also a defendant in the District Court suit. Once again Dillon’s main contention is that the United States has failed to act to recover her lands in violation of its fiduciary relationship, its trust duties, and its responsibilities under 25 U.S.C. § 185. Dillon additionally alleges, as she did before the Montana District Court, that the United States made an appraisal of her land but "conspired to keep such appraisal” from Dillon until the transaction was complete.
Though it appears there may be a' substantial jurisdictional question present, it is not necessary to address it directly for: "When our jurisdiction is denied by a party, we are not required to decide whether we have jurisdiction or not if the case is submitted on cross motions for summary judgment, with documents, and we can see from these documents that the claim is without substance on its face. Monett v. United States, 190 Ct. Cl. 1, 419 F. 2d 434 (1969), cert. denied, 400 U.S. 846 (1970)" Small v. United States, 200 Ct. Cl. 11, 17-18, 470 F. 2d 1020, 1024 (1972).
This case may be decided on straightforward grounds of res judicata and collateral estoppel. Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 593 (1974); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597 (1948); *897 Tanker Hygrade No. 18, Inc. v. United States, et al., 208 Ct. Cl. 488, 526 F. 2d 805 (1975), cert. denied, 426 U.S. 920 (1976).
Plaintiff in this case asserts the same set of facts and the same statutory provisions as were presented in Dillon v. Antler Land Company of Wyola, et al., 341 F. Supp. 734 (D. Mont. 1972), aff’d, 507 F. 2d 940 (9th Cir. 1974), cert. denied, 421 U.S. 992 (1975). Plaintiffs complaint before this court alleges the United States and its officers and agents have wilfully omitted and neglected a duty required of them by the laws and treaties of the United States, especially of the Act of June 14, 1862, 25 U.S.C. § 185 (12 Stat. 427).
Plaintiff attempts to escape application of res judicata and collateral estoppel by insisting her claim before the District Court was limited to defendant’s liability under the Federal Tort Claims Act. We do not think the issue was so narrowly decided for the District Court found, as emphasized by the Court of Appeals, 507 F.2d at 944, that the Crow Allotment Act, 25 U.S.C. § 185:
. . . [Ijmposes no duty upon the United States to litigate the cases arising out of dealings of emancipated Indians with fee lands.
Moreover, as plaintiff recognizes, in her motion for reconsideration before the District Court, "Petitioner did suggest that in determining whether the United States has a duty to litigate under 25 U.S.C. § 185, it should consider the fiduciary responsibility to its Indian Wards.” Yet the motion for reconsideration was denied. We believe these circumstances and the history of the prior litigation contained herein, show plaintiffs claims have been fully litigated and decided against plaintiff.
As to plaintiffs allegation that the United States made an appraisal of her land, but conspired to keep the appraisal from her until the transaction was complete, the allegation must face the presumption that public officials act "conscientiously in the discharge of their duties.” Librach v. United States, 147 Ct.Cl. 605, 612 (1959). A finding to the contrary requires well-nigh irrefragable proof tantamount to evidence of some specific intent to injure the plaintiff, malice or conspiracy. Kalvar Corp. v. United States, 211 Ct.Cl. 192, 543 F. 2d 1298 (1976), cert. *898 denied, 434 U.S. 830 (1977). Plaintiffs bare allegation of conspiracy, alone, is insufficient to raise a factual question.
Accordingly, it is therefore ordered, upon consideration of the parties’ submissions and other papers, but without oral argument that defendant’s motion is granted and plaintiffs petition is dismissed.
Plaintiffs motion for rehearing was denied January 11, 1980. Plaintiffs petition for a writ of certiorari was denied, 449 U.S. 825 (1980).