MASCO CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant,

and

Mas–Hamilton Group, Mosler, Inc., and Hamilton Products Group, Inc., Third–Party Defendants.

No. 99–93 C.

United States Court of Federal Claims.

May 8, 2001.

Paul M. Laurenza, Washington, DC, attorney of record for Plaintiff. Guy Porter Smith, Michael D. Harris, and Charles Rosenberg, of counsel.

John Fargo, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, attorney of record for Defendant, with whom were Vito J. DiPietro, Director; and David W. Ogden, Assistant Attorney General. Robert G. Hilton, of counsel.

David E. Schmit, attorney of record for Third–Party Defendant Mas–Hamilton Group. J. Robert Chambers, attorney of record for Third–Party Defendants Mosler, Inc., and Hamilton Products Group, Inc.

## OPINION

DAMICH, Judge.

This matter is before the Court on the Plaintiff's motion for summary judgment on infringement, filed on June 23, 2000, and the Defendant's cross-motion for summary judgment of non-infringement, filed on November 1, 2000. For the reasons enumerated below, the Court GRANTS the Defendant's cross-motion and DENIES the Plaintiff's motion for summary judgment as moot.

## I. Background

Plaintiff Masco Corporation alleges that the United States infringed two of its patents, United States Patent Nos. 5,540,068 ("the '068 patent") and 5,778,711 ("the '711 patent"). These patents are for electronic combination locks. The Court has already issued its opinion construing the patents at issue in this case, familiarity with which is presumed. *Masco v. United States,* 47 Fed. Cl. 449 (2000). In that opinion, the Court construed the fourth step of Claim 1 of both the '068 patent and the '711 patent as a step-plus-function limitation under 35 U.S.C. § 112 ¶ 6 (1994).[1] This limitation was limited to the acts described in the specification; namely,

> that rotating the knob (or dial) turns the cam wheel until a portion of the cam wheel contacts a linking part (the detent) and pushes the linking part that, in turn, releases a blocking part (the cantilever arm) that frees the lever nose to come into contact with the cam wheel notch.

*Id.* at 455–56 (*citing* '068 patent, Col. 7, lines 24–52). The Court then construed the term "to drive," as found in the fourth step of Claim 1 of both the '068 patent and the '711 patent, as meaning "to push." *Id.* at 457.

This case is related to an earlier lawsuit filed by the Plaintiff's corporate predecessor, LaGard, Inc. This case, which was filed in the Eastern District of Kentucky, involved United States Patent No. 5,307,656 ("the '656 patent"), the parent of the '068 patent and the '711 patent. In *Mas–Hamilton Group v. LaGard, Inc.,* 21 F.Supp.2d 700 (E.D.Ky. 1997), *aff'd* 156 F.3d 1206, 48 U.S.P.Q.2d 1010 (Fed.Cir.1998), the district court determined that the X–07 lock, the accused device in that case (and in the present case), did not infringe the '656 patent either literally or under the doctrine of equivalents. Specifically, the district court construed the term "positively driving," appearing in claims 1 and 31 of the '656 patent, as requiring the lever moving element to "push" the lever protrusion into engagement with the cam wheel notch.

> 135. The specification of the '656 patent describes the claim term "positively driving" as providing "positive" engagement of the lever with the cam wheel. As described in the specification of the '656 patent, when the proper conditions are met, the solenoid housing shifts linearly to release the spring-biased spring at the lower end of the cantilever arm, thus causing the lever to be pushed into contact with the cam to enable withdrawal of the bolt. Thus, as described and illustrated in the '656 patent, "positive" driving is associated with *pushing* the lever into the cam wheel.

*Id.* at 728 (emphasis in original). The district court then had to determine whether the operation of the X–07 in moving the lever is the same as, or equivalent to, pushing. At trial, LaGard argued that pushing and pulling were the same or equivalent because the two forces differed only as a matter of perspective. However, the district court made

---

1. Claim 1 of the '068 patent claims:
   the method comprising the steps of:

   \*     \*     \*     \*     \*     \*

   transmitting a force applied to the dial to the lever after the lever and the dial have been operably connected to drive the lever to a position where the protrusion can contact the surface of the cam wheel in such a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.

   '068 Patent, Col. 8, lines 23, 37–42.

   Claim 1 of the '711 patent has similar language. Its claim reads as follows:
   transmitting a force applied to the knob to the lever through the rigid connection after the lever and the knob have been operably connected to drive the lever to a position where the protrusion can contact the surface of the cam wheel in such a manner that the lever will be pulled by the cam wheel during rotation of the cam wheel.

   '711 Patent, Col. 8, lines 34–40.

the following adverse finding with respect to Claim 1:

173. The '656 patent lock accomplishes its "positively driving" function by pushing the lever into the cam wheel. In the X–07 lock, the lever is pulled into the cam wheel in a substantially different way. Thus, the X–07 lock mechanism is not the same as disclosed in the '656 patent specification, nor is it equivalent, and the function and result are different. Since this claim limitation is not met exactly, there can be no literal infringement.

*Id.* at 733. The district court made the same finding as to Claim 31:

181. Further, the X–07 lever is not "positively driven," i.e., pushed, into the cam; rather, it is pulled into the cam. This operation and result, and the mechanical mechanism required to accomplish them, are substantially different from that disclosed in the '656 patent. Since this claim limitation is not met exactly, there can be no literal infringement.

*Id.* at 735.

The district court then held that Claims 1 and 31 of the '656 patent were not infringed under the doctrine of equivalents. 21 F.Supp.2d at 738–39. Specifically, the district court made the following finding with respect to Claim 1 of the '656 patent:

206. As demonstrated above, the elements of Claim 1 at issue here, principally the lever retaining means, the lever operating means and the lever movement blocking element operate in substantially different ways in the '656 patent claim and the X–07 lock. Further, the function of those elements in the context of the lock, as well as the results achieved in terms of the internal manipulation of parts, is also substantially different as previously shown. Consequently, application of the function/way/result test demonstrates that the differences between Claim 1 and the X–07 lock are substantial.

*Id.* at 738. With respect to Claim 31, the district court made the following finding:

210. As demonstrated above, the lever moving element, movable link element and the retaining element of Claims 31 and 33

operate in substantially different ways in the '656 patent and the X–07 lock. Further, the engagement position and the withdrawn position of the components in the two mechanisms are substantially different. Further, the function and result achieved in the two mechanisms is also substantially different. Consequently, application of the function/way/result test demonstrates that the differences between Claims 31 and 33 and the X–07 lock are substantial.

*Id.* at 739. Therefore, at issue is whether, in light of the Court's construction of the term "to drive" as meaning "to push," the Plaintiff is precluded from arguing that, in Claim 1 of the '068 patent and Claim 1 of the '711 patent, the force transmitted from the rotation of the knob or dial "to drive" the lever protrusion to the cam wheel notch is a pushing action or that a pulling action is equivalent to a pushing action under the doctrine of equivalents.

## II. Plaintiff Masco is Precluded from Proving that the Lever in the X–07 Lock is Pushed or that Pushing and Pulling are Equivalent Forces under the Doctrine of Equivalents

### A. Standard of Issue Preclusion

The doctrine of collateral estoppel, now usually known as issue preclusion, is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *See also Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In order for either an issue of fact or an issue of law to be given preclusive effect, four elements must be satisfied:

(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

*In re Freeman,* 30 F.3d 1459, 1465, 31 U.S.P.Q.2d 1444, 1448 (Fed.Cir.1994).

### B. Elements of Issue Preclusion

The Defendant claims that each element of issue preclusion or collateral estoppel is satisfied. First, the Defendant claims that the issue of whether the X–07 operation involves pushing the lever into engagement is precluded from re-litigation is an issue of fact that is identical to the same issue in the previous action. The issue of whether the operation of the X–07 lock includes transmitting a force "to push" the lever into engagement with the cam wheel was present in the Kentucky action. The X–07 lock in this case is precisely the same lock that operates in the same manner as the X–07 lock in the Kentucky action. Therefore, the Defendant argues that the issue of whether the lever in the X–07 is pushed or pulled is identical in both proceedings. The Plaintiff argues that it is impossible for the identical issues to have been litigated because different patents are presented. The Plaintiff notes, in particular, that the present claims are method claims, whereas the claims litigated in the prior case were apparatus claims. The Plaintiff relies mostly on *Comair Rotron, Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 33 U.S.P.Q.2d 1929 (Fed.Cir.1995). The Federal Circuit, in this instance, declined to apply collateral estoppel to a finding of non-infringement with respect to a similar issue that appeared in a later patent. Finally, the Plaintiff argues that the scope of patent claims is hypothetical, and that, therefore, statements about the scope of the patent claim are to be narrowly construed in determining whether the scope of the patent claims is entitled to issue preclusion effect in a subsequent infringement case. *Pfaff v. Wells Elec., Inc.,* 5 F.3d 514, 517, 28 U.S.P.Q.2d 1119, 1122 (Fed.Cir.1993); *A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 218 U.S.P.Q. 965 (Fed.Cir.1983).

Second, the Defendant argues that the issue of whether the X–07 involved pushing the lever into engagement with the cam wheel was actually litigated in the prior case. In this case, Masco presents in its motion for summary judgment the very same testimony of Gerald Dawson during cross-examination in the earlier proceeding. (Masco Supp.

Mem. at 10.) The Plaintiff, in contrast, curtly argues that the same push/pull issue was not actually litigated in the district court because the scope of patent claims is hypothetical and that the claims at issue are different.

Third, the Defendant argues that the issue was necessary to the first judgment in the prior action. The district court actually decided this issue adversely to LaGard and relied on it in holding that Claims 1 and 31 of the parent '656 patent were not infringed, which was a basis, among others, for the final judgment of non-infringement. The district court found that the X–07 did not push the lever into engagement. The district court also held that pulling was not equivalent to pushing, so there was no infringement under the doctrine of equivalents which was also a basis, among others, for the final judgment of non-infringement. The Plaintiff, however, maintains that the findings of the district court are not necessary to the final judgment because there were alternative grounds for a finding of non-infringement both literally and under the doctrine of equivalents. It cites *Comair Rotron* as authority for not granting issue preclusion when a trial court presents alternative grounds for its final judgment in the prior proceeding. *Comair Rotron,* 49 F.3d at 1538, 33 U.S.P.Q.2d. at 1932.

Fourth, although the Defendant does not fully address the issue of whether the Plaintiff had a full and fair opportunity to litigate the issue in the first action, the Plaintiff concedes that there was not any procedural unfairness in the district court. (Pl.'s Opp'n at 10.) However, the Plaintiff claims that applying issue preclusion when there are alternative grounds for judgment is unfair because the court may not have thoroughly considered this issue as it had on other grounds.

### C. Analysis

1. The issue of whether the X–07 lever is pushed or pulled into engagement is identical to an issue decided in the Kentucky district court and was actually litigated in the Kentucky district court.

As stated above, the Plaintiff claims that issue preclusion should not apply when dif-

ferent patents are at issue, particularly when, so the Plaintiff claims, the method patent claims in the present litigation are different from the apparatus claims litigated in the Kentucky district court. "[C]laims of [a patent] cannot bar a later suit on the separate and distinct claims of [a different patent]." *Comair Rotron,* 49 F.3d at 1540, 33 U.S.P.Q.2d. at 1933 (Rader J., concurring). However, the Plaintiff misconstrues the nature of the issue at hand. The Defendant does not seek collateral estoppel on the determination of the scope of Claim 1 of the '068 patent or Claim 1 of the '711 patent at issue in this case. Rather, it asks the Court to preclude re-litigation of the issue of whether the operation of the X–07 lock involves pushing the lever into engagement and whether the acts of pushing or pulling upon the lever are equivalent. It is of no consequence that Claims 1 and 31 of the '656 patent at issue in the Kentucky litigation are means-plus-function claims and Claim 1 of the '068 patent and Claim 1 of the '711 patent are step-plus-function claims: either the lever in the X–07 lock is pushed or the lever in the X–07 lock is not pushed. Likewise pushing and pulling on the lever of the X–07 lock are equivalent forces under the doctrine of equivalents or pushing and pulling are not equivalent. The finding for which the Defendant seeks preclusive effect relates not to the claims of the patent, but rather to the mechanism of the structure.

The Kentucky district court determined that, as stated earlier, the operation of the X–07 lock did not include pushing the lever into engagement with the cam wheel. It then held that pulling was not equivalent to pushing, and that there was no infringement under the doctrine of equivalents.[2] Because

these factual issues in the district court are precisely the same in the present case, there can be no doubt that the issue of whether the X–07 operation involved pushing the lever is identical for the purposes of issue preclusion.

Likewise, the Plaintiff is wrong when it argues that it did not litigate the issue of whether pushing and pulling were equivalent forces in the Kentucky district court because the scope of patent claims is hypothetical and that the claims in the present case are different from that of the Kentucky district court. As stated above, the issue involves an interpretation of whether the lever of the X–07 was pushed and whether pushing and pulling are equivalent. Regardless of whether apparatus claims or method claims were at issue, the issue of pushing versus pulling was litigated, and the issue was considered by the district court as thoroughly as any other issue.

Furthermore, the issue of whether the pulling action upon the lever in the X–07 is equivalent to pushing on the ground the difference between pushing and pulling is only a matter of perspective, as the Plaintiff argues in this case, was in fact actually pursued by the Plaintiff's predecessor, LaGard, in the Kentucky district court. Its own counsel pursued this argument with Mas–Hamilton's chief engineer, Gerald Dawson, on cross-examination at trial in the Kentucky district court.

Q. If you do a vector here between the bottom surface of this slot and the top surface of the pin, which—how would you draw that vector?

A. It would be straight down, the same as the arrow.

---

2. The finding of non-infringement under the doctrine of equivalents for Claim 1 of the '656 stated, "[a]s demonstrated above ... the lever retaining means, the lever operating means, and the lever movement blocking element operate in substantially different ways in the '656 patent and the X–07 lock. Further, the function of those elements in the context of the lock, as well as the results ... is also substantially different." *Mas–Hamilton Group,* 21 F.Supp.2d at 738 (emphasis added). This specific finding is obviously predicated on the earlier finding of the district·court that, after construing "positively driving" as "pushing," "[i]n the X–07 lock, the lever is pulled

into the cam wheel in a substantially different way." *Id.* at 733. There can be little doubt that the Kentucky district court found non-infringement under the doctrine of equivalents because pushing and pulling are substantially different ways of applying force to the lever, thereby failing the function/way/result test of the doctrine of equivalents. *Insituform Technologies, Inc. v. Cat Contracting, Inc.,* 161 F.3d 688, 692, 48 U.S.P.Q.2d 1610, 1614 (Fed.Cir.1998). The Kentucky district court followed the exact same line of reasoning with respect to Claim 31 of the '656 patent.

Q. Okay, So if one were to look down from the top, one would see the surface of this slot pushing down on that pin; correct?

A. If you're considering—to do that, you would be considering the—only the two surfaces. And, in that case, yes.

\* \* \* \* \* \*

In that case, the extension of the slide, if viewed from the top, in this case, and only viewed with the extension of the slide and the pin and-then the top of the slide is pushing down on the pin.

Q. So it's a matter of perspective, is it not, whether something is pulled or pushed? Is it not?

A. Yes, I suppose you could say that.

Q. And driving is pushing; correct?

A. Yes.

(Def.'s App. at A28.).

The Plaintiff argues, however, that the push/pull issue was not actually litigated because the "rulings on the scope of patent claim are hypothetical" and that the claims here are different. *Pfaff v. Wells Electronics, Inc.*, 5 F.3d at 517, 28 U.S.P.Q.2d at 1122 (Fed.Cir.1993). In *Pfaff*, the court wrote that "judicial statements regarding the scope of patent claims are hypothetical insofar as they purport to resolve the question of whether prior art or products not before the court would, respectively, anticipate or infringe the patent claims." *Id. quoting A.B. Dick Co.*, 713 F.2d at 704, 218 U.S.P.Q. at 968.[3] This argument, as with most of Plaintiff's other arguments, seems plausible only if preclusion were being applied to issues specific to the '068 and '711 patent claims rather than to issues relating to the structure of the X–07 lock.

Therefore, the Court finds that the issue of whether the X–07 lever is pushed or pulled into engagement is identical to an issue decided in the Kentucky district court and was actually litigated in the Kentucky district court.

2. The issue of whether the lever of the X–07 lock is pushed or pulled into engagement with the cam wheel was necessary to the judgment of the Kentucky district court action.

The Plaintiff argues that the issue of whether the lever of the X–07 lock was pushed or whether pushing or pulling are substantially the same under the doctrine of equivalents was not necessary to the judgment of the Kentucky court action because there were a number of alternative grounds for the court's judgment of non-infringement. The question of whether issue preclusion should lie when a judgment has been based on alternative grounds is not always an easy one to answer. The Federal Circuit, in *Comair Rotron* discusses two competing answers to this problem without committing itself to either one. *Comair Rotron*, 49 F.3d at 1538, 33 U.S.P.Q.2d at 1932. One theory is a bright line standard from the Restatement (Second) of Judgments which maintains that issue preclusion should never lie anytime a judgment has been based on alternative grounds, any single one of which standing alone could have supported the judgment. RESTATEMENT (SECOND) OF JUDGMENTS, § 27, Comment i (1982). This standard seems to import the additional criterion of "a full and fair opportunity to litigate" into a pre-existing standard that an issue be sufficiently "necessary" to the judgment so as to avoid being mere dicta. The rationale for the bright line test seems to be as follows: a court which supports a judgment with alternative grounds may not have thoroughly considered all possible grounds of the judgment. Further, if issue preclusion were permitted to lie in this instance, litigants would be encouraged to appeal all alternative findings so as to avoid the preclusive effect of any finding. This result would, according to the Restatement, increase the burden of litiga-

---

**3.** Worth noting is the text omitted from the foregoing *A.B. Dick* quote cited in *Pfaff*: *"Except in the context of validity or infringement,* judicial statements regarding the scope of patent claims are hypothetical insofar as they purport to resolve the question of whether prior art or prod- ucts not before the court would, respectively, anticipate or infringe the patent claims." *A.B. Dick Co.*, 713 F.2d at 704, 218 U.S.P.Q. at 968 (emphasis added). In any event, the Court is not applying issue preclusion on the scope of patent claims.

tion on the judicial system thereby defeating the purpose of the doctrine of issue preclusion by encouraging unnecessary appeals that would not have been taken otherwise.

The second theory[4] is the older general view that "alternative grounds upon which a decision is based should be regarded as 'necessary' for purposes of determining whether the plaintiff is precluded by the principles of res judicata or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative grounds." 18 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 132.03[4][b] (3rd ed.2000). The rationale behind this theory is the furtherance of judicial economy which underlies the principle of issue preclusion. So long as the alternative ground for judgment is truly a basis for the decision and not mere dicta or a incidental or collateral decision, preclusive effect shall be given to that specific issue. *See Tanker Hygrade No. 18, Inc. v. United States*, 208 Ct.Cl. 488, 526 F.2d 805 (1975).

The Federal Circuit, as stated earlier, has committed itself to neither of these two theories, though it did quote approvingly *Tanker Hygrade No. 18, Inc.*, which appears to hold that issue preclusion can lie for alternative grounds for judgment in the current understanding of the term.[5] Rather, the Federal Circuit takes a more pragmatic approach by "look[ing] to the facts of the particular case in deciding whether justice, expediency, and the public interest are served by collateral estoppel." *Comair Rotron*, 49 F.3d at 1538, 33 U.S.P.Q.2d at 1932. Accordingly, in determining whether preclusive effect should be given to the issues at hand, the Court looks to the totality of the circumstances, including the relationship of the issue to the judgment (whether it is a material issue or is merely dicta) and the relationship between the prior proceeding and the present action before the Court (such as considerations of judicial economy and fairness) to determine whether an issue is truly neces-

**4.** The *Comair Rotron* court formulates the general view as stating that the mere existence of an alternative ground is not sufficient to deprive the judgment of preclusive effect, but that the issue for which estoppel is sought must truly be "necessary" to the judgment. *Comair Rotron*, 49 F.3d at 1538, 33 U.S.P.Q.2d. at 1932 *citing* 1B JAMES W. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 0.443[5.–1] (2d. ed.1993). Moore's formulation is tautological and begs the question of how "necessary" must an issue be in order for it to be "necessary to the judgment."

**5.** The Federal Circuit notes in *Comair Rotron* that the Court of Claims in *Tanker Hygrade No. 18, Inc.*, held that if an issue was "cumulative" rather than an "alternative" ground for judgment, the issue was essential to the judgment. The distinction is an obscure one and the source of significant confusion. The Court, however, has discovered that the cases cited by the *Tanker Hygrade* court which purport to explain the nature of a "cumulative" ground for judgment are in fact describing what is today commonly considered to be an "alternative" ground for judgment. 208 Ct.Cl. at 500, 526 F.2d 805. The following is a pertinent example of what was formally called a "cumulative" ground for judgment.

Both grounds were distinctly and squarely presented by the record, and relied on, and the latter more especially fully argued by counsel. The court might just as well have rested its decision on the second ground, if found good, without noticing the first, as upon the first without noticing the second. Or it might, if

thought proper, have decided both, as it did. It is a matter of almost everyday occurrence that the record presents two or more points, either of which, if sustained, would determine the case, and the court decides them all. In such case it can no more be said that one rather than the other is obiter.

*Id. (quoting Hawes v. Contra Costa Water Co.*, 11 F.Cas. 862, 865 (C.C.S.D.Cal.1878), *aff'd*, 104 U.S. 450, 26 L.Ed. 827 (1881)).

*Hawes* seems to coincide with what is normally today called an "alternative" ground for judgment. Its description of a decision with "cumulative" grounds for judgment is very similar to the district court's decision in *Mas–Hamilton*. In contrast, what the *Tanker Hygrade No. 18, Inc.*, court referred to as an "alternative" ground of judgment, to the extent that it is even distinguishable from a "cumulative" finding, seems in fact to refer to an issue that is "incidental, collateral, or immaterial" to the judgment. 208 Ct.Cl. at 497, 526 F.2d 805 *quoting Halpern v. Schwartz*, 426 F.2d 102 (2nd Cir.1970). In short, it is extremely difficult to reconcile precedents in this Circuit because the term "alternative ground for judgment" appears to be a linguistic moving target. Because the terminology is likely to mislead practitioners and jurists, the "cumulative" vs. "alternative" distinction should either be abandoned, reformulated or at least renamed a "material" finding versus an "immaterial" finding. Accordingly, the Court finds that the issue of whether pushing and pulling are equivalent forces or the issue of whether the lever was in fact pushed or pulled are both material to the judgment.

sary to the judgment. *See also Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1571–72, 221 U.S.P.Q. 394, 398 (Fed.Cir.1983).

■ The totality of the circumstances dictate that issue preclusion should be applied in this instance. First, the finding of the district court that the₀ X–07 lock does not operate by pushing the lever into engagement with the cam wheel, but rather, by pulling it in a substantially different way from that disclosed in the '656 patent, was not collateral to the judgment or otherwise dicta. It was a specific fact, among others, that the district court relied on in holding that the claims of the '656 patent were not infringed. This is distinct from *A.B. Dick Co.*, where the Federal Circuit held that a district court's finding that a patent did not encompass "oscillographic recordings" did not have preclusive effect in a subsequent action because the statement regarding "oscillographic recordings" was, in fact, not tied to any limitation in the claims of the patent in the first suit. *A.B. Dick Co.*, 713 F.2d at 704, 218 U.S.P.Q. 965, 968.

Second, the push/pull issue resolves an issue necessary to the judgment at the infringement stage of litigation in both the district court action and in this case. Had that issue manifested itself in the claims construction phase of the district court action, the Court would be applying issue preclusion regarding judicial statements of the scope of a patent claim, which it cannot do. However, the district court and this Court independently construed "driving" to mean "pushing" for different patents, and the same factual issue of whether the lever in the X–07 is pushed or pulled in a substantially different way resolves both cases during the infringement stage of litigation. This is precisely the kind of situation where issue preclusion should be applied. There is no need to waste judicial resources by engaging in unnecessarily duplicative fact-finding. The Court finds that applying issue preclusion in this instance is just.

Therefore, the Court finds that, in this instance, that the issue of whether the X–07 lock is pushed or pulled in a substantially different manner is necessary to the judgment.

3. The issue of whether the lever of the X–07 lock is pushed or pulled was fully and fairly litigated in the Kentucky district court action.

The Plaintiff admits that there was no procedural unfairness in the district court. However, it claims that it would be unfair for issue preclusion to be applied for all of the reasons outlined above. Because the Court has already rejected the Plaintiff's arguments and has already found that issue preclusion in this instance comports with judicial efficiency and fairness, the Court finds that the push/pull issue was fully and fairly litigated.

III. **Because the Plaintiff is Precluded from Proving that the Pulling Action upon the Lever of the X–07 Lock is Equivalent to Pushing in the Claims at Issue, the X–07 Lock Infringes Neither the '068 Patent Nor the '711 Patent.**

■ In order to infringe a method claim, each of the claimed steps must be performed. *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 846, 23 U.S. P.Q.2d 1481, 1491 (Fed.Cir.1992). As stated earlier, Claim 1 of the '068 patent and Claim 1 of the '711 patent requires that the rotation of the dial or the knob transmit a force "to drive" the lever protrusion into engagement with the cam wheel slot. This Court construed "to drive" as meaning "to push." Because the Plaintiff is precluded from proving that the operation of the X–07 lock includes pushing the lever into engagement with the cam wheel, or that the pulling action in the X–07 lock is equivalent to pushing, it cannot prove that the final step has been performed. Because all limitations are essential for a finding of infringement of a method claim, the Plaintiff cannot establish that Claim 1 of either the '068 patent or the '711 patent is infringed. Claim 1 of both the '068 patent and the '711 patent is the only independent claim in the suit. Because the remaining claims are dependent on Claim 1 of both the '068 patent and the '711 patent, they are

not infringed as well. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553, 10 U.S.P.Q.2d 1201, 1207 (Fed.Cir.1989). Because none of the claims in this action are infringed, the Court must find that the accused device, the X–07 lock, does not infringe either the '711 patent or the '068 patent.

### IV. Conclusion

Because the accused device does not infringe either the '068 patent or the '711 patent, the Court GRANTS the Defendant's cross-motion for summary judgment and DENIES the Plaintiff's motion for summary judgment. The Clerk of the Court is directed to enter judgment in favor of the Defendant and to dismiss this action. No costs. **IT IS SO ORDERED.**