Dr. David D. STARK, Plaintiff–Appellant,

v.

ADVANCED MAGNETICS, INC., and Jerome Goldstein, Ernest V. Groman and Lee Josephson, Defendants–Appellees.

No. 93–1443.

United States Court of Appeals, Federal Circuit.

July 1, 1994.

* Senior Circuit Judge Cowen agrees with this analysis.

Henry C. Dinger, Goodwin, Procter & Hoar, Boston, MA, argued for plaintiff-appellant. With him on the brief were Kenneth J. Parsigian and Mary M. Diggins.

David S. Godkin, Testa, Hurwitz & Thibeault, Boston, MA, argued for defendants-appellees. With him on the brief was Richard S. Sanders.

Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Dr. David D. Stark appeals the summary judgment of the United States District Court for the District of Massachusetts,[1] denying his request for correction of inventorship of six United States patents assigned to Advanced Magnetics, Inc. (AMI) and dismissing the accompanying state law counts. We vacate the grant of summary judgment as based on an incorrect legal theory, and remand for determination of the merits of his claims.

*Background*

Dr. Stark, a physician specializing in radiology, collaborated with AMI in certain experimental studies that he states relate to the patented subject matter. The first of the six patents was Patent No. 4,770,183 issued on September 13, 1988, entitled "Biologically Degradable Superparamagnetic Particles for Use as Nuclear Magnetic Resonance Imaging Agents" (the '183 patent). This patent was mentioned by title in AMI's Annual Report for the year 1988. The Annual Report referred to AMI's collaboration with Dr. Stark.

Five additional patents were obtained by AMI: Patent No. 4,827,945 issued May 9, 1989, entitled "Biologically Degradable Superparamagnetic Materials for Use in Clinical Applications"; Patent No. 4,951,675 issued August 28, 1990, entitled "Biodegradable Superparamagnetic Metal Oxides as Contrast Agents for MR Imaging"; Patent No. 5,055,288 issued October 8, 1991, entitled "Vascular Magnetic Imaging Method and Agent Comprising Biodegradable Superparamagnetic Metal Oxides"; Patent No. 5,069,216 issued December 3, 1991, entitled "Silanized Biodegradable Superparamagnetic Metal Oxides as Contrast Agents for Imaging the Gastrointestinal Tract"; and Patent No. 5,102,652 issued April 7, 1992, entitled "Low Molecular Weight Carbohydrates as Additives to Stabilize Metal Oxide Compositions". Dr. Stark was not named as an inventor of any of the six patents.

On September 3, 1992 Dr. Stark filed the suit here on appeal. He asserted that he is the sole or a joint inventor of the subject matter claimed in the patents and requested correction of inventorship in accordance with 35 U.S.C. § 256. Dr. Stark also charged AMI with breach of the duty of good faith and fair dealing, breach of implied contract, unjust enrichment, misappropriation of trade secrets, conversion, negligent misrepresentation, misrepresentation, and unfair trade practices, all in violation of Massachusetts law.

The district court granted summary judgment to AMI with respect to correction of inventorship. The court held that Dr. Stark knew or should have known of the existence of the '183 patent when he received the Annual Report in early 1989, and that he had not acted diligently in seeking the correction. The summary judgment was applied to all six patents. The state law tort claims were dismissed as barred by the three-year statute of limitations. The contract and unfair trade practice claims were also dismissed, the court ruling that Dr. Stark had one year from the date of dismissal to bring these claims in state court.

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When material facts are in dispute summary adjudication may nonetheless be appropriate if, with all factual inferences

1. *Stark v. Advanced Magnetics, Inc.*, No. 92–12157–Y (D.Mass. Apr. 19, 1993).

drawn in favor of the non-movant, the movant would nonetheless be entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Continental Can Co. USA v. Monsanto Co.,* 948 F.2d 1264, 1265, 20 USPQ2d 1746, 1747 (Fed.Cir.1991). The correct law must of course be applied, whether to undisputed facts or to disputed facts viewed favorably to the non-movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") On these premises the appellate court determines, upon *de novo* review, whether the summary judgment was correctly granted as a matter of law. *Quad Environmental Technologies Corp. v. Union Sanitary District,* 946 F.2d 870, 872, 20 USPQ2d 1392, 1392 (Fed.Cir.1991).

## I

### Correction of Inventorship

The statute requires that a patent application be filed in the name of the inventor or inventors, *see* 35 U.S.C. §§ 111, 115, and 116, and permits the correction of non-fraudulent errors in inventorship. 35 U.S.C. § 116 ¶ 3 authorizes correction of inventorship in pending applications, and 35 U.S.C. § 256 applies to issued patents. In the latter case correction may be had by application to the Commissioner, or by way of judicial action:

35 U.S.C. § 256. Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the

Commissioner shall issue a certificate accordingly.

Before the enactment of § 256, incorrect inventorship of an issued patent would simply invalidate the patent. The purpose of § 256 was to provide a remedy for a bona fide mistake in inventorship. S.Rep. No. 1979, 82nd Cong., 2d Sess. 7 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2401.

■ Section 256 does not limit the time during which inventorship can be corrected. *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.,* 988 F.2d 1157, 1162, 26 USPQ2d 1038, 1042 (Fed.Cir.1993) ("Since the defense of patent invalidity based on incorrect inventorship can be raised at any time, correction of inventorship should be similarly available at any time.") Section 256 thus serves the public policy of preserving property rights from avoidable forfeiture. *See Henderson v. Carbondale Coal & Coke Co.,* 140 U.S. 25, 33, 11 S.Ct. 691, 694, 35 L.Ed. 332 (1891) ("[F]orfeitures are never favored. Equity always leans against them, and only decrees in their favor when there is full, clear and strict proof of a legal right thereto.")

■ Balancing these considerations, equity disfavors undue and prejudicial delay by a person who may have an interest in the property of another. Synthesizing these equitable interests, the defenses of laches and estoppel have been applied in actions under § 256. *Advanced Cardiovascular,* 988 F.2d at 1163, 26 USPQ2d at 1043. *See generally Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892) ("laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.")

### A

■ AMI moved for, and the district court granted, summary judgment based on lack of diligence on the part of Dr. Stark in seeking judicial correction of inventorship.

Lack of diligence may be an appropriate basis for barring legal action when there is an affirmative obligation on the claimant to act promptly and without significant pause in establishing a legal right. The common law has recognized that varying degrees of diligence may be required, depending on the circumstances. For example, a higher degree of diligence is appropriate when the claimant is chargeable with injury or disadvantage to another due to the claimant's failure to act expeditiously:

> It is, however, a sound rule, as to diligence, that the party must proportion his care to the injury likely to accrue to others by any improvidence on his part; and the graver, more important, or valuable the interests involved, and the more imminent the peril, the more is the vigilance required to constitute diligence.

26A C.J.S. Diligence at 943–44 (1956) (citations omitted).

Thus there are circumstances wherein diligence is an appropriate requisite to pursuit of a particular legal right, whether or not the defense of laches or estoppel may be invoked against the claimant. In some circumstances the law will presume injury or disadvantage due to delay, and diligence becomes an absolute obligation. Such is the premise of 37 C.F.R. § 1.48, the regulation on which the district court relied in requiring diligence of Dr. Stark. However, this reliance was incorrectly placed, for § 1.48 implements not 35 U.S.C. § 256, but 35 U.S.C. § 116:

**37 C.F.R. § 1.48  Correction of inventorship.**

(a) If the correct inventor or inventors are not named in an application for patent through error without any deceptive intention on the part of the actual inventor or inventors, the application may be amended to name only the actual inventor or inventors. Such amendment must be diligently made and must be accompanied by:

(1) a petition including a statement of facts verified by the original named inventor or inventors establishing when the error without deceptive intention was discovered and how it occurred;

(2) an oath or declaration by each actual inventor or inventors as required by § 1.63;

(3) the fee set forth in § 1.17(h); and

(4) the written consent of any assignee. When the application is involved in an interference, the petition shall comply with the requirements of this section and shall be accompanied by a motion under § 1.634.

The diligence required by 37 C.F.R. § 1.48 relates to correction of inventorship while the patent application is still pending, before grant of the patent. Dr. Stark states that he had no knowledge of the pendency of any of these six patents, an averment that on summary judgment must be accepted as true. Since Dr. Stark was unaware of their pendency, he can not have sought correction of inventorship by AMI and the original named inventors in terms of § 1.48.

A different regulation governs the correction of inventorship of issued patents:

**37 C.F.R. § 1.324  Correction of inventorship in patent.**

Whenever a patent is issued and it appears that the correct inventor or inventors were not named through error without deceptive intention on the part of the actual inventor or inventors, the Commissioner may, on petition of all the parties and the assignees and satisfactory proof of the facts and payment of the fee set forth in § 1.20(b), or on order of a court before which such matter is called in question, issue a certificate naming only the actual inventor or inventors. A request to correct inventorship of a patent involved in an interference shall comply with the requirements of this section and shall be accompanied by a motion under § 1.634.

Section 1.324, unlike § 1.48, contains no diligence requirement. This difference is conspicuous, and it must be deemed to be material.

AMI refers to *Rival Manufacturing Co. v. Dazey Products Co.*, 358 F.Supp. 91, 177 USPQ 432 (W.D.Mo.1973), and *Crainich v. Feinstein*, No. 91 C 4045, 1991 WL 259448 (N.D.Ill. December 3, 1991) in support of a diligence requirement for actions to correct inventorship of an issued patent. Although

these district court cases are not of precedential value, we point out that their statements that § 256 requires diligence, as a matter of law, goes beyond the statute and implementing regulation.

In *Rival v. Dazey* the error in inventorship was discovered by the assignee and made known to the assignee's patent attorney while the application was still pending, but those involved made no move to correct it until two years later, after the patent had issued and been sold to another. The district court found that the error in inventorship was not inadvertent; that it was inexcusable and deliberate; that it was a fraud upon the Patent Office; that the inventorship was uncorrectable because the statute at that time did not permit substitution of one inventive entity for another; that there was lack of diligence by all concerned; and that there was deceptive intent based on concealment of the correct inventors. This case, on its particular facts, does not guide decision of the case at bar.

In *Crainich v. Feinstein* the omitted inventor knew that he was omitted from a pending patent application, communicated with the patentee without raising inventorship rights, and made no objection until five years later when he sought judicial correction of the issued patent under 35 U.S.C. § 256. The court found estoppel, in view of detrimental reliance by and prejudice to the other party. Citing *Rival v. Dazey,* the district court stated that there was a diligence requirement in § 256, thus continuing the unwarranted reading of the statute.

The PTO Board of Interferences had referred to a judicially-imposed diligence requirement of § 256, thus incorporating the error into PTO proceedings. In *Willis v. Suppa,* 209 USPQ 406 (Bd.Pat.Int'f.1980) the Board held that a patentee who was party to an interference proceeding must have exercised diligence in filing a reissue application for the purpose of correcting inventorship of the patent involved in the interference. The Board cited district court decisions requiring diligence under § 256. Indeed, we agree that diligent action is required during a pending interference proceeding, where a change of inventorship can directly affect the trial and outcome of the proceeding. Such a requirement is guided by ordinary principles governing the duties of parties litigant. *See Van Otteren v. Hafner,* 278 F.2d 738, 126 USPQ 151 (CCPA 1960) (duty to state whether a party to an interference is a sole or joint inventorship). However, this consideration does not impart the § 1.48 diligence requirement, as a matter of law, to actions under § 1.324.

In view of these holdings, none of which is precedential in this court, we clarify and reinforce that the governing principle is as stated in the statute and regulations. Neither 35 U.S.C. § 256 nor 37 C.F.R. § 1.324 requires that an omitted inventor of an issued patent must diligently bring a lawsuit to correct inventorship or be forever barred from doing so. Absent any statutory or regulatory requirement of diligence in bringing legal action to correct inventorship of an issued patent, it was error to hold that Dr. Stark's action to correct inventorship was barred for lack of diligence as a matter of law. Whether diligent action is required in a particular case must be determined on the facts of that case.

### B

■ On review of the district court's grant of summary judgment against Dr. Stark, we consider whether the circumstances of this case required diligent legal action by Dr. Stark, when the factual circumstances and inferences drawn therefrom are viewed favorably to Dr. Stark.

The district court measured Dr. Stark's diligence from the time he received the AMI Annual Report in early 1989 until he filed suit in September 1992. Dr. Stark averred that he made inquiries of AMI soon after he received the Annual Report, and that he was told that the '183 patent covered "only AMI's chemical methods of synthesizing the particles", and did not claim any contribution of Dr. Stark based on his collaborative work on nuclear magnetic resonance imaging. AMI did not specifically contradict these statements, and indeed they must be accepted as true for the purpose of this analysis. AMI's averment that Dr. Stark was informed about the content of the '183 application at the time

it was filed in 1986 may serve to place the fact in dispute, but does not change the standard of the grant of summary judgment against Dr. Stark, whereby Dr. Stark's version of the facts must be accepted.

Dr. Stark averred that he believed AMI's answers, and was deliberately misled into thinking that the methods he developed in connection with these imaging agents were not included in the '183 patent. AMI's argument was that patent copies were readily available, that the issuance of the '183 patent was constructive notice of its content, and that the duty of verification of the subject matter claimed in the '183 patent was on Dr. Stark. The parties debate whether the issuance of a patent is constructive notice of its content for this purpose, Dr. Stark arguing that a wrongdoer who lulls the claimant into acceptance of a falsehood will not be protected. *See Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board,* 502 U.S. 105, ——, 112 S.Ct. 501, 510, 116 L.Ed.2d 476 (1991) (it is a " 'fundamental equitable principle' that 'no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime' ") (citations omitted).

Although a wrongdoer can not invoke the protection of the law to enforce a benefit from its own inequitable actions, the claimant may not be excused from the duty of inquiry in all circumstances. In deciding whether it was reasonable for Dr. Stark to have believed any false or misleading representations made to him without independent inquiry, it is relevant to determine whether there was a relationship of trust between the parties, for in such case independent inquiry would be more likely to be forestalled by falsehood than if the relationship were remote.

The record describes a scientific collaboration and consulting relationship between Dr. Stark and the AMI scientists, of several years' duration. Whether Dr. Stark was deliberately misled by persons he had reason to trust, and whether he behaved reasonably in failing to seek prompt verification and diligent correction, are questions of fact. On the averments before the district court these facts had been placed in issue, and are material to the result. Since these facts could not be found or inferred adversely to Dr. Stark on AMI's motion, summary judgment in favor of AMI was improperly granted.

### C

■ The period between patent issuance and the filing of this suit, for the six AMI patents, ranges from five months to under four years. The summary judgment was applied to all six patents.

AMI states that the six patents relate to the same invention and that issuance of the '183 patent constituted notice to Dr. Stark that there might be future patents, such that if he was barred by lack of diligence in correcting the inventorship of the '183 patent, he was barred as to all six. This position raises several issues that were not discussed by the district court. We take judicial notice that multiple patents are not permitted on the same invention, and that there must be differences among the six patents. And since patent applications are secret, knowledge by Dr. Stark of the pendency of additional patents can not be presumed. We have been directed to nothing in the record to establish as undisputed fact that Dr. Stark knew that additional patent applications were pending.

We see no reason to depart from the general rule that each patent is a separate chose in action. Thus it was incorrect in law to hold that correction of the five subsequently issued patents was barred, upon the court's finding of lack of diligence as to the first. We draw an analogy to the law of laches, where the general rule is that the laches period does not accrue until each patent issues, even if the patents are interrelated. *Cf. Meyers v. Brooks Shoe Inc.,* 912 F.2d 1459, 1462, 16 USPQ2d 1055, 1057 (Fed.Cir. 1990), *overruled on other grounds, A.C. Auckerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1038, 22 USPQ2d 1321, 1333 (Fed.Cir.1992).

### Conclusion

The requirement of diligence in bringing suit to correct inventorship under 35 U.S.C.

§ 256 was incorrect in law. The summary judgment is vacated as to the six patents. The cause is remanded for determination of the merits of the asserted inventorship claims.

## II

### The State Law Counts

Upon granting summary judgment on the patent counts, the district court dismissed the state law counts on the grounds that the tort claims were time barred and the contract and unfair competition claims could be pursued in state court. Dr. Stark appeals the dismissal of the tort claims.

### A

The counts of conversion, misappropriation of trade secrets, negligent misrepresentation, and misrepresentation, were dismissed on statute of limitations grounds. In accordance with Mass.Gen.Laws ch. 260, Sec. 2A, tort actions "shall be commenced only within three years next after the cause of action accrues." In general the cause of action accrues when the tortious injury occurs. *Frank Cooke, Inc. v. Hurwitz,* 10 Mass.App.Ct. 99, 406 N.E.2d 678, 683 (1980). Such injury occurs when "a reasonable person, in the exercise of due diligence, 'would have discovered the damage.'" *Edwards v. John Hancock Mutual Life Ins. Co.,* 973 F.2d 1027, 1029–30 (1st Cir.1992) (quoting *Riley v. Presnell,* 409 Mass. 239, 565 N.E.2d 780, 786 (1991)).

The district court apparently concluded that all of the tort claims accrued when Dr. Stark received notice of the existence of the '183 patent upon receipt of the 1988 Annual Report in early 1989. As discussed in Part I, Dr. Stark states that although he learned at that time of the existence of the '183 patent, he did not know its content until some time later. He states that the Massachusetts "discovery rule" provides that if a cause of action is "inherently unknowable" at the time of its occurrence, the period of limitation does not begin until the aggrieved person actually knew or should have known of its occurrence through the exercise

of reasonable diligence. *Tagliente v. Himmer,* 949 F.2d 1, 4–5 (1st Cir.1991).

AMI responds that the cause was not at all unknowable, and that in Massachusetts the issuance of a patent is constructive notice of its content for purposes of the three-year limitation on tort claims. AMI cites *Prescott v. Morton International, Inc.,* 769 F.Supp. 404, 406, 19 USPQ2d 1766, 1767 (D.Mass. 1990), wherein the district court, applying state law, held that "the issuance of a patent makes a conversion of a trade secret presumptively knowable and thus starts the clock running on the statute of limitation". Dr. Stark responds that under Massachusetts law fraudulent concealment of the facts giving rise to the cause of action will toll the statute, Mass.Gen.Laws ch. 260 § 12, even accepting that patent issuance is constructive notice of its content for tort limitations purposes.

In *Wise v. Hubbard,* 769 F.2d 1, 4, 226 USPQ 958, 960 (1st Cir.1985) the court held that the issuance of a patent is constructive notice of its existence and content, absent a positive act with intent to conceal. Applying Massachusetts law, the court in *Wise v. Hubbard* held that there was a duty of inquiry unless there was a relationship of trust with the patentee and positive acts of concealment. *Id.* AMI states that the burden of establishing tolling is on Dr. Stark, and cites *Wise v. Hubbard* for the statement that "'the estoppel provision of Mass.Gen.Laws Ann. ch. 260 Sec. 12 is generally not available where the plaintiff is capable of discovering the facts allegedly concealed'". 769 F.2d at 4, 226 USPQ at 960 (quoting *Burbridge v. Board of Assessors of Lexington,* 11 Mass. App.Ct. 546, 417 N.E.2d 477, 480 (1981)). On the facts of that case, which included an eleven year delay, the court in *Wise v. Hubbard* held that since there were no acts of concealment and no fiduciary relationship, the statute would not be tolled. *Id.*

In *Frank Cooke v. Hurwitz,* 406 N.E.2d at 684–85, the Massachusetts state court held that to toll ch. 260 § 12 for asserted negligence and breach of fiduciary duty, there must be either an affirmative act done with the intent to deceive, or failure to comply with a fiduciary duty of full disclosure. Dr.

Stark states that he actually inquired about the '183 patent, that there was a relationship of trust based on scientific collaboration over several years, and that he was deliberately deceived by AMI. Were such facts established, we do not read the Massachusetts cases as weighing on the side of a tortfeasor who practiced deliberate deception of a professional colleague. It is also relevant to consider the relative ease or difficulty of discovering the truth, and the actions comprising the asserted deception, in deciding whether justice requires that the statute be tolled. *Frank Cooke v. Hurwitz*, 406 N.E.2d at 683–85.

The district court did not decide whether there was a relationship of trust between these parties, or a fiduciary duty that was not met, or deliberate misrepresentation. The court did not discuss these points of Massachusetts law, or the applicability of the Massachusetts discovery rule and tolling practice to Dr. Stark's view of the facts. Massachusetts jurisprudence, which involves equitable as well as legal considerations, merits a finer tuning than is reflected in this summary disposition.

### B

Whether all of the tort causes in the complaint accrued at the moment of grant or actual notice of the '183 patent is not determinable on the record before us. Proprietary information that was properly transferred, as in a collaborative relationship, is not deemed misappropriated until the information is used or divulged in a way contrary to the terms of that relationship. *See, e.g., Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir.1985) (under Massachusetts law, plaintiff asserting misappropriation of trade secrets must show that defendant "made use of the disclosure in breach of the confidence reposed in him [by the plaintiff]"). As discussed in Part I, four of the six patents issued less than three years before suit was filed, thus facially avoiding the period of limitations. These complexities of fact and law were not explored by the district court. On Dr. Stark's averments, dismissal of all of the state law tort actions was unwarranted.

### C

It was not disputed that the district court is empowered to hear those state law claims, for the requirements of supplemental jurisdiction, 28 U.S.C. § 1367, are met. As explained in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), there is a substantial federal claim; the federal and state claims derive from common operative facts; and the plaintiff would normally expect to try all of the claims in a single proceeding.

### Conclusion

In view of our vacation of the summary judgment as to the patent counts, we also vacate the dismissal of the state law tort counts. The case is remanded for further proceedings consistent with this opinion.

Costs to Dr. Stark.

### *VACATED AND REMANDED*

RADER, Circuit Judge, concurs in the result.