31 F.3d 1177
 33 U.S.P.Q.2d 1785
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
COMAIR ROTRON, INC., Plaintiff-Appellee,
v.
MATSUSHITA ELECTRIC CORPORATION OF AMERICA and Matsushita
Electric Industrial Co., Ltd., Defendants-Appellants.
 No. 93-1410.
 United States Court of Appeals, Federal Circuit.
 July 19, 1994.
 
 Before ARCHER, Chief Judge,[1] RICH, and LOURIE, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 Matsushita Electric Corporation of America and Matsushita Electric Industrial Co., Ltd., collectively Matsushita, appeal from the order, entered July 2, 1990, of the United States District Court for the District of New Jersey, Case No. 85-4308, holding on summary judgment that U.S. Patent No. 4,494,028 (the '028 patent) was not invalid and was infringed, and from the May 17, 1993 final order and judgment holding that the infringement was willful and awarding treble damages of $17,173,110, prejudgment interest of $4,456,596, and attorney fees. We affirm.
 
 BACKGROUND
 
 2
 The long and tortured history of this case need not be recited here. Suffice it to say that Comair Rotron, Inc. (Comair) filed suit on September 3, 1985 alleging infringement of the '028 patent by Matsushita. On July 2, 1990, the district court ruled on cross motions for summary judgment and held that the '028 patent claims were not invalid and that Matsushita infringed certain of those claims. The matter was referred to a Special Master (Master) for consideration of equitable and judicial estoppel, damages, and willfulness. The Master issued a 132-page report and decision on August 24, 1992 finding that: (1) Matsushita did not establish judicial or equitable estoppel; (2) Comair was entitled to damages of $5,724,370 plus prejudgment interest; (3) Matsushita's infringement was willful; and (4) Comair was entitled to treble damages and attorney fees. After considering Matsushita's objections, the trial court adopted the Master's report in its entirety. On May 12, 1993, the trial judge issued a final order and judgment awarding $21,629,706 to Comair. Matsushita appealed to this court on June 11, 1993. We have jurisdiction under 28 U.S.C. Sec. 1295(a)(1) (1988).
 
 DISCUSSION
 I. The '028 Patent
 
 3
 The '028 patent is directed to an integral field and commutation magnet for use in DC brushless motors. Such motors are used, for example, in small electric fans used to cool electronic devices such as computers. Figs. 2A-2C of the '028 patent are reproduced below.
 
 
 4
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 5
 Fig. 2A shows the magnet 24 which has two separately magnetized sections, the lower commutation portion 30 and the upper field portion 32. Fig. 2B, a cross-section on the line 2B-2B of Fig. 2A, shows the magnetic field orientations in the field portion 32. Segments 32A and 32B are alternatively magnetized, while segments 32C and 32D are unmagnetized. The four sections are arranged so that the magnetized segments are separated and spaced from each other by the unmagnetized segments. Fig. 2C, a cross-section on the line 2C-2C of Fig. 2A, shows the commutation magnet portion 30. This portion includes two adjacent oppositely radially magnetized commutation segments 30A and 30B.
 
 
 6
 The '028 patent has 12 claims, of which claims 1 and 9 are independent. Claim 1 recites:
 
 
 7
 1. An integral annualr [sic] field and commutation magnet for a brushless DC motor formed on a single piece of permanently magnetized material and including a first annular field magnet portion at a first location and a second annular commutation magnet portion at a second location axially displaced from the first location, said field magnet portion having magnetized and unmagnetized sectors, said unmagnetized sectors being substantially unmagnetized portions of the magnetic material of said piece, being adjacent to magnetized sectors of the field magnet portion and integral therewith and having a substantial angular length.
 
 II. Summary Judgment
 
 8
 In deciding whether to grant a motion for summary judgment, a court must first determine whether a genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). We review de novo the district court's grant of summary judgment as well as the application of procedural and substantive law. Quad Environmental Tech. Corp. v. Union Sanitary Dist., 946 F.2d 870, 20 USPQ2d 1392 (Fed.Cir.1991).
 
 A. Validity
 
 9
 When the issue is patent invalidity under 35 U.S.C. Sec. 103, the movant must overcome the Sec. 282 statutory presumption of validity by proving obviousness by clear and convincing evidence based on undisputed facts, all factual inferences being drawn in favor of the summary judgment opponent. Quad Environmental Tech. Corp., 946 F.2d at 872, 20 USPQ2d at 1393. In determining obviousness, a court must (1) determine the scope and content of the prior art; (2) ascertain the differences between the prior art and the claimed invention; and (3) resolve the level of ordinary skill in the pertinent art. Secondary considerations such as commercial success, long felt but unsolved need, and failure of others are also considered. Graham v. John Deere Co., 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966).
 
 1. Content of the prior art
 
 10
 Matsushita asserts that the district court erroneously resolved factual differences against it based on the court's statement that Comair and Matsushita "differ on the content of the prior art." Matsushita's spin on the district court's statement is disingenuous at best. In a footnote immediately following the quoted statement, the district court noted that the "content" dispute centered around whether certain prior art could be considered based on Comair's assertion that the art was not timely presented. That issue was resolved in favor of Matsushita necessarily defeating Matsushita's argument here that a factual issue was resolved against it precluding summary judgment.
 
 
 11
 Matsushita also asserts that the district court improperly granted summary judgment because Japanese laid-open patent application No. 56-10066 (the '066 JLOPA) "does not teach true nulls." We disagree. There is no factual dispute created by the assertion of an inference for which there is no basis in the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). As found previously by this court, the '066 JLOPA does not teach the use of true nulls, Matsushita's arguments notwithstanding. Thus, there was no genuinely disputed material issue with regard to the content of the '066 JLOPA.
 
 
 12
 With regard to the Sunbeam motor, Matsushita asserts that the district court improperly decided the factual issue of whether Sunbeam intended or appreciated the significance of the true nulls disclosed there. However, this does not raise a material factual dispute because regardless of whether the necessity of true nulls was taught by the Sunbeam motor, the district court determined that true nulls were in fact taught. Importantly, the district court found that the Sunbeam motor teaches nothing about an integral magnet with commutation portion "all in one-piece" because the Sunbeam motor is a brush motor.
 
 
 13
 We similarly find that the district court did not determine any disputed material factual issues with regard to either the EM article or the Takahashi patent. Matsushita's bare assertion that the EM article teaches the "concept" of true nulls "using different words" is untenable and does not raise a disputed issue. Additionally, Matsushita's recognition in the district court that the Takahashi patent does not teach true nulls in the field portion negates its assertion here of a material dispute regarding an "express disclosure of the purpose of true nulls" in the Takahashi patent.
 
 
 14
 2. Differences between the prior art and the claimed invention
 
 The district court stated that
 
 15
 the prior art had true nulls, single piece field magnets with the N and S poles divided by true nulls, another single piece commutation portion separately created with a magnetization pattern different from the field portion. Nothing in the prior art combined these in a single item and directed how it was to be done.
 
 
 16
 The court then concluded that Matsushita "failed to raise a genuine issue of material fact that something in the prior art pointed to combining all these elements." We agree. There must be some teaching or suggestion in the references or in the prior art as a whole that would lead one of ordinary skill in the art to make the combination for invalidity based on obviousness to be proven. Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1052, 5 USPQ2d 1434, 1438 (Fed.Cir.), cert. denied, 488 U.S. 825 (1988).
 
 3. Secondary considerations
 
 17
 A showing of commercial success of a claimed invention, wherever such success occurs, is relevant in resolving the issue of non-obviousness. Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., 730 F.2d 1452, 1461, 221 USPQ 481, 487 (Fed.Cir.1984). When a patented device is a commercial product, there is an inference that its commercial success is due to the patented device itself, absent a showing to the contrary. See, e.g., Hughes Tool Co. v. Dresser Indus., Inc., 816 F.2d 1549, 1556, 2 USPQ2d 1396, 1402 (Fed.Cir.), cert. denied, 484 U.S. 914 (1987).
 
 
 18
 There is evidence that Comair "overmagnetized" its fans for a period, thereby wiping out the true nulls. The district court found this to be irrelevant with respect to secondary considerations because overmagnetization "still allowed the production of a cheap motor whose low cost was a major advantage over existing fans." Matsushita argues that the court's statement proves that there is no nexus between the claimed invention and the asserted commercial success.
 
 
 19
 However, that some Comair fans were overmagnetized does not mean that fans made in accordance with the claimed invention did not achieve commercial success. In any event, failure to prove commercial success does not weigh against a finding of validity. Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 960, 1 USPQ2d 1196, 1199 (Fed.Cir.1986). Matsushita has failed to raise a question of material fact with regard to secondary considerations.
 
 4. Conclusion as to validity
 
 20
 The district court concluded that a person of ordinary skill in the art would not "pull all the disparate elements of the [prior] art together to create the '028 Patent" because nothing in the prior art suggests the desirability and thus the obviousness of combining these disparate elements. We agree and conclude that Comair was entitled to summary judgment on validity.
 
 B. Infringement
 
 21
 Determining whether a patent is infringed involves a two-step inquiry: (1) interpreting the claims; and (2) comparing the properly interpreted claims to the accused device. Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). As a question of law, claim interpretation may be determined by summary judgment. Johnston v. IVAC Corp., 885 F.2d 1574, 1579-80, 12 USPQ2d 1382, 1385-86 (Fed.Cir.1989). A mere dispute concerning the meaning of a claim term does not necessarily create a genuine issue of material fact precluding summary judgment. Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 797, 17 USPQ2d 1097, 1100 (Fed.Cir.1990).
 
 1. The two-piece fan
 
 22
 The structure and construction of the two-piece fan differs from the one-piece fan in only one respect; in the two-piece fan, a first piece of magnetizable material is inserted and affixed to the rotor cup and a second piece of magnetizable material is inserted into the cup and affixed adjacent to the first piece. The two pieces are then magnetized. The only issue, therefore, is whether the '028 patent claims, properly construed, cover such two piece construction. The only disputed claim terms are "formed on a single piece" (claim 1) and "integral" (all claims).
 
 
 23
 Upon review of the language of the claims, the specification, the prosecution history, and the testimony of the experts, the district court determined that "integral" or "single piece" means a single piece "when the magnetic material becomes a functioning magnet." Matsushita asserts that the district court's interpretation of the claims was fatally flawed because it misconstrued the claims to include process limitations. It is well settled that "this court reviews judgments not opinions." Atlantic Thermoplastic Co. v. Faytex Corp., 5 F.3d 1477, 1480, 28 USPQ2d 1343, 1345 (Fed.Cir.1993). Thus, we will not disturb the district court's grant of summary judgment unless it was based on harmful error. We conclude as a matter of law that the district court arrived at the correct result in construing the terms "single piece" and "integral." The two-piece fan includes two pieces of magnetizable material which are affixed together in the rotor cup and then magnetized in the same manner as the one-piece fan. Because Matsushita affixes the two pieces of magnetizable material and then magnetizes them, the two-piece fan includes an integral annular field and commutation magnet (claims 1 and 9) formed on a single piece of magnetized material (claim 1). The two-piece fan thus literally infringes at least claims 1 and 9 of the '028 patent. The district court's grant of summary judgment of infringement is affirmed.
 
 2. The axial fan
 
 24
 Matsushita does not dispute that claims 1, 4, and 6-8 of the '028 patent, which do not contain any limitation regarding the orientation of magnetization, are infringed by its axial fan. As long as one claim is literally infringed, the patent is infringed. Panduit Corp v. Dennison Mfg. Co., 836 F.2d 1329, 1330 n. 1, 5 USPQ2d 1266, 1267 n. 1 (Fed.Cir.1987). We therefore need not address infringement of any other claims of the '028 patent by the axial fan.
 
 III. Damages
 
 25
 The general rule for determining the actual damages to a patentee that is itself producing the patented item, is to determine the sales and profits lost to the patentee because of the infringement. Although the statute states that the damage award shall not be "less than a reasonable royalty," 35 U.S.C. Sec. 284, the purpose of this alternative is not to provide a simple accounting method, but to set a floor below which the courts are not authorized to go.
 
 
 26
 Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1326, 5 USPQ2d 1255, 1260 (Fed.Cir.1987). The proper measure of damages is that amount which will compensate the patent holder for his pecuniary loss attributable to the infringement, Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578, 220 USPQ 490, 493 (Fed.Cir.1983) and need not be proven with unerring precision. Bio-Rad Lab., Inc. v. Nicolet Instrument Corp., 739 F.2d 604, 612, 222 USPQ 654, 663-64 (Fed.Cir.), cert. denied, 469 U.S. 1038 (1984). When damages are calculated as a royalty, the determination remains one of assessing the damages to the injured party. Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1574, 7 USPQ2d 1606, 1612 (Fed.Cir.1988).
 
 
 27
 Calculation of damages for patent infringement is a finding of fact which we review under the clearly erroneous standard. SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1164, 17 USPQ2d 1922, 1925 (Fed.Cir.1991). Certain subsidiary decisions underlying a damage award, such as the methodology of determining a reasonable royalty, are reviewed under the abuse of discretion standard. Id.
 
 
 28
 Various damage theories were advanced by the parties; in fact, nearly 100 pages of the Master's report dealt with the calculation of damages. Matsushita objects to the Master's royalty determination primarily on two grounds, first that the Master, in rejecting the cost savings calculations of both Matsushita and Comair, "pulled numbers out of thin air" and second, that cost savings not attributable to the '028 patent were included in the calculated royalty.
 
 
 29
 The propriety of basing the royalty on Matsushita's cost savings is not disputed.[2] Rather, Matsushita contends that the Master's cost calculation is fatally flawed because of his reliance on Matsushita's evidence, given his concerns about its validity. However, we do not find the Master's limited reliance on Matsushita's Vendor Cost Quotations to have been unreasonable and in fact it led to a reduction in the cost savings which was calculated by Comair. Similarly, we do not find the Master's reduction by one third of Comair's total cost savings to have been unreasonable, given the available evidence. Finally, that the Master arrived at a cost savings to Matsushita which was higher than Comair's calculation of this amount does not make his determination erroneous given his rejection of the underlying data used by Comair to calculate Matsushita's cost savings and the resultant conclusion that Comair's cost savings were the correct starting point.
 
 
 30
 Matsushita's contention that the Master improperly included cost savings that were not attributable to the '028 patent, having rejected the "entire market value rule" as inapplicable, is also without merit. Rejection of the "entire market rule" did not preclude the Master from considering the inherent benefits of the claimed invention for, as this court held in Central Soya, damages, here a reasonable royalty, properly compensate the patentee for his pecuniary loss attributable to the infringement. The Master's consideration of "how the magnetization takes place and how the magnet is properly installed in the rotor cup" was not unreasonable. We therefore conclude that the Master's royalty determination was not clearly erroneous.
 
 
 31
 IV. Willful Infringement and Increased Damages
 
 
 32
 A court may, should it find from all of the circumstances that infringement was willful, increase the amount of damages under 35 U.S.C. Sec. 284 (1988). A finding of willfulness justifies, but does not compel, an award of enhanced damages. State Indus., Inc. v. Mor-Flo Indus., Inc., 948 F.2d 1573, 1576, 20 USPQ2d 1738, 1740 (Fed.Cir.1991). A finding of willful infringement is reviewed under the clearly erroneous standard. Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580, 24 USPQ2d 1321, 1338 (Fed.Cir.1992).
 
 
 33
 Matsushita argues that Gustafson, Inc. v. Intersystems Indus. Products, Inc., 897 F.2d 508, 13 USPQ2d 1972 (Fed.Cir.1990), precludes a willfulness finding because it received knowledge of the '028 patent and the ITC complaint simultaneously. However, Gustafson held that simultaneous receipt combined with nonfrivolous defenses would preclude a willfulness finding. Id. at 511. The Master concluded that Matsushita's continued infringement after the ITC holding of invalidity was reversed and after summary judgment of infringement was granted supported a finding of willful infringement because then Matsushita had no nonfrivolous noninfringement defenses. Viewing the totality of the circumstances, including the Master's justified conclusion that Matsushita either did not obtain advice of counsel or obtained advice that it infringed, and Matsushita's suspect conduct regarding the nomenclature of the two-piece fan, we conclude that the willfulness determination was not clearly erroneous.
 
 
 34
 Although not set forth as such, the Master weighed a majority of the factors to be considered in a determination to enhance damages enumerated by this court in Read Corp. v. Portec, Inc., 970 F.2d 816, 827, 23 USPQ2d 1426, 1435-36 (Fed.Cir.1992), including ameliorating or mitigating factors. Matsushita has failed to convince us that the Master abused his discretion in trebling damages and awarding attorney fees. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 Chief Judge Archer assumed the position of Chief Judge on March 18, 1994
 
 
 [2]
 Matsushita complains that in calculating Matsushita's cost savings, the Master used Comair's own cost savings calculations. Matsushita's argument is untenable, however, because, as found by the Master, Matsushita's failure to provide its production costs for the fan it produced in 1985 justified the Master's reliance on Comair's cost calculations