**COMAIR ROTRON, INC.,**
**Plaintiff–Appellant,**

v.

**NIPPON DENSAN CORPORATION and Nidec Corporation, Defendants–Appellees.**

No. 93–1397.

United States Court of Appeals, Federal Circuit.

Feb. 24, 1995.

---

Robert L. Kahn, Bromberg & Sunstein, Boston, MA, argued, for plaintiff-appellant. With him on the brief were Lee Carl Bromberg and Kerry L. Timbers.

J. Charles McKriski, Day, Berry & Howard, Hartford, CT, argued, for defendants-appellees. With him on the brief was Alan T. Levesque.

Before NEWMAN and RADER, Circuit Judges, and GARBIS, District Judge.[*]

Opinion for the court filed by Circuit Judge NEWMAN. Concurring opinion filed by Circuit Judge RADER.

PAULINE NEWMAN, Circuit Judge.

The United States District Court for the District of Connecticut granted summary judgment in favor of Nippon Densan Corpo-

[*] Honorable Marvin J. Garbis, United States District Court for the District of Maryland, sitting by designation.

ration and its United States subsidiary Nidec Corporation (collectively "Nidec"), holding that Comair Rotron, Inc. ("Rotron") was collaterally estopped from charging Nidec with infringement of Rotron's United States Patents No. 4,494,028 ("the '028 patent") and No. 4,779,069 ("the '069 patent").[1] We reverse the grant of summary judgment, for collateral estoppel does not apply on the facts of this case.

## COLLATERAL ESTOPPEL

The '028 patent, entitled "Integral Coaxial Commutation and Rotor Magnets and Apparatus and Method for Making Same," relates to certain field commutation magnets that are used, *inter alia*, in DC (direct current) fans. The '069 patent is a division of the '028 patent, and claims a method and apparatus for making the field commutation magnets of the '028 patent. Rotron filed suit against Nidec in the District of Connecticut on November 11, 1991, for infringement of both the '028 and '069 patents. Nidec moved for summary judgment, based on prior litigation in the District of New Jersey. *Comair Rotron Inc. v. Matsushita Electric Industrial Co., Ltd.*, No. 85–4308 (HLS) (D.N.J. May 12, 1993), *aff'd Comair Rotron, Inc. v. Matsushita Electric Corp. of America*, 31 F.3d 1177, 1994 WL 381809 (Fed.Cir.1994). The Connecticut court granted the motion, ruling that Rotron was collaterally estopped, as to both the '028 and '069 patents, from charging that Nidec fans infringed Rotron's patents.

We conduct plenary review of the grant of summary judgment. *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573, 31 USPQ2d 1290, 1292 (Fed.Cir.1994). Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The evidence provided by the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor.

1. *Comair Rotron, Inc. v. Nippon Densan Corporation and Nidec Corporation*, No. 2:91CV00032 (AVC) (D.Conn. May 4, 1993).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). On the issue of collateral estoppel there was no genuine dispute of material fact; we review the district court's decision for correctness.

█ The principle of collateral estoppel, also called issue preclusion, protects a defendant from the burden of litigating an issue that has been fully and fairly tried in a prior action and decided against the plaintiff. *See Blonder–Tongue Laboratories, Inc. v. Univ. of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971) (defensive collateral estoppel). The defendant must show that in the prior action the party against whom estoppel is sought had a full and fair opportunity to litigate the issue; the issue was actually litigated; the controlling facts and applicable legal rules were the same in both actions; resolution of the particular issue was essential to the final judgment in the first action; and the identical issue was decided in the first action. *Montana v. United States,* 440 U.S. 147, 153–55, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Blonder–Tongue,* 402 U.S. at 332–33, 91 S.Ct. at 1444–45, 169 USPQ at 521; *Commissioner v. Sunnen,* 333 U.S. 591, 599–601, 68 S.Ct. 715, 720–721, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 353, 24 L.Ed. 195 (1876).

## THE '028 PATENT

█ In the prior litigation Rotron filed suit, in the United States District Court for the District of New Jersey, against Matsushita Electric Corporation of America and Matsushita Electrical Industrial Co., Ltd. (together "Matsushita") for infringement of the '028 patent. The New Jersey district court held, *inter alia,* that the '028 patent was infringed by certain Matsushita (Panasonic) fans.

In the damages phase of the New Jersey action an issue was whether Matsushita's damages should be measured as a royalty or by Rotron's lost profits. Rotron's request for lost profits occasioned determination, in accordance with *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,* 575 F.2d 1152, 1156, 197 USPQ 726, 729–30 (6th Cir.1978), of whether there was a significant presence in the marketplace of noninfringing substitutes for the patented device. At the trial Rotron asserted that fans made by Nidec and NMB, two major purveyors, infringed the '028 patent. Matsushita responded that fans of makers identified as Papst, EMB, JFC, Etri, Howard, Toyo, Seiko, Sunon, and Tetra, as well as NMB and Nidec, were acceptable noninfringing substitutes for the Rotron fans.

Rotron did not dispute that Papst, and apparently also EMB, JFC, Etri, Howard, Toyo and Seiko, make noninfringing competitive fans. The district court, adopting the Special Master's Report, found that:

> [T]here were necessarily noninfringing acceptable alternatives to the '028 rotor magnet in fans marketed by significant competitors particularly in the large-volume small brushless DC fan market during the infringement period. These included Papst, Nidec and NMB, also known as Minebea. The evidence revealed that these companies, at one time or another, had sold small brushless DC fans in the large-volume market, in competition with both Rotron and Panasonic.

\* \* \* \* \* \*

Rotron was aware of more than forty companies which sold DC fans at about or during the infringement period; and that nine of these were significant Rotron competitors, being EMB, Globe Motors, Howard, IMC, Japan Servo, Nidec, NMB, Papst and Panasonic. Brown [a Rotron witness] also admitted that Rotron had tested fans made by EMB and Japan Servo and determined that they did not infringe the '028 Patent.

The Report also stated:

> Rotron also dismisses as factors in the market Nidec and NMB fans, alleging that because their rotor magnets infringed the '028 patent, they were not acceptable substitutes. I find Rotron's evidence of infringement, primarily in the form of testimony of Brown and its expert, James L. Kirtley, Jr., of little weight and not persuasive. Instead, I accept the testimony in this respect of Panasonic's expert, Dr. Alexander Kusko, that Nidec and NMB rotor

magnets and fans did not infringe the '028 Patent.

The court concluded that since there were noninfringing substitute fans in the marketplace, the damages awarded for Matsushita's infringement would be based on a royalty, not on Rotron's lost profits. It has not been shown that the finding as to Nidec was essential to this holding, for the New Jersey court's decision was supportable, whether or not the Nidec fans were found to be infringing. The judgment in New Jersey can have been reached on the basis of the New Jersey court's findings that the fans of Papst and other manufacturers, with or without Nidec, were fully competitive substitutes.

Thus the specific finding concerning Nidec's fans has not been shown to be essential to the New Jersey court's judgment. It suffices to negate preclusion that the finding as to Nidec's infringement was not essential to the damages decision in the New Jersey action. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) ("[J]udgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1571, 221 USPQ 394, 398 (Fed.Cir.1983) (to give preclusive effect to a particular finding, it must have been necessary to the judgment in the prior case).

The parties dispute whether the court could have awarded Rotron lost profits based on Nidec's market share, citing *State Industries, Inc. v. Mor-Flo Industries, Inc.,* 883 F.2d 1573, 1578, 12 USPQ2d 1026, 1029 (Fed. Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990), and thus whether the finding of noninfringement was indeed essential to the outcome. The New Jersey court did not adopt this theory of damages, and indeed precedent does not require that it have done so on the record of this case, where there were many competitors, some of whom were asserted to be infringers and some of whom were conceded to be noninfringing. Such economic complexities have not led to a bright line rule, and indeed precedent emphasizes the discretionary deference that is available to trial courts in connection with damage awards. *Id.* at 1577–78, 12 USPQ2d at 1028–29.

Professor Moore advises that the "mere existence" of an alternative ground for a judgment need not deprive the judgment of preclusive effect; but he also stresses that the issue for which estoppel is sought must clearly have been necessary to the judgment. 1B James W. Moore et al., Moore's Federal Practice ¶ 0.443[5.–1] (2d ed. 1993). The Restatement, indeed, favors the stricter rule that when a judgment may have been based on alternative grounds, any of which would be sufficient to support the result, the judgment is not preclusive with respect to any ground standing alone. Restatement (Second) of Judgments § 27, comment i (1982). The Restatement explains that a determination that is supportable on alternative grounds may not have been as thoroughly considered on all of the possible grounds, and cautions that any encouragement to litigants to appeal all peripheral findings for the sole purpose of avoiding the possible preclusive effect as to any one unnecessarily increases the burdens of litigation on parties and courts. The Court in *Blonder–Tongue* raised similar cautions concerning the solidity of the basis of the prior ruling:

> Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.

402 U.S. at 329, 91 S.Ct. at 1443, 169 USPQ at 520. This determination is not a "simple matter," *id.* at 333, 91 S.Ct. at 1445, 169 USPQ at 521, and the imposition of collateral estoppel requires that the party's "full and fair" litigation opportunity pass muster "procedurally, substantively and evidentially," *id.* at 333, 91 S.Ct. at 1445, 169 USPQ at 521 (quoting *Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301 (D.C.Mass.1960)). In sum, when the question is whether to preclude any trial whatsoever with respect to a different party, the estoppel must be supported by "justice and equity." *Id.* 402 U.S. at 333–34, 91 S.Ct. at 1444–45, 169 USPQ at 521.

A survey of the jurisprudence shows that the courts have indeed looked to the facts of the particular case in deciding whether justice, expediency, and the public interest are served by collateral estoppel. Our precedent illustrates this sensitivity. In *Tanker Hygrade No. 18, Inc. v. United States*, 526 F.2d 805, 810, 208 Ct.Cl. 488 (1975) our predecessor Court of Claims imposed collateral estoppel based on its determination that the issues included in the grounds for the first decision were cumulative, not alternative, and thus essential to the judgment. In *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 218 USPQ 965 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984) this court declined to impose collateral estoppel based on the first court's interpretation of the scope of patent claims, this court stating that the interpretation of patent claims is not done in the abstract, and was not "essential to a final judgment on the question of validity or infringement." 713 F.2d at 704, 218 USPQ at 968.

The New Jersey court's finding of noninfringement of the '028 patent by the Nidec fans did not meet the criteria for collateral estoppel, for the finding was not essential to the final judgment. Thus we need not decide whether the other conditions requisite to collateral estoppel were met, for all are necessary, *see A.B. Dick, supra*. The decision of the district court must be reversed.

### THE '069 PATENT

The '069 patent was not part of the New Jersey action between Rotron and Matsushita. The Connecticut district court held that there was collateral estoppel as to the '069 patent as well as the '028 patent, explaining that the patents were related and that since Nidec did not infringe the '028 patent it could not infringe the '069 patent.

In addition to our reversal of the estoppel with respect to the '028 patent, we point out that separate patents describe "separate and distinct [inventions]," 35 U.S.C. § 121; 37 C.F.R. § 1.141, and it can not be presumed that related patents rise and fall together. Since the issue for which estoppel is sought must have been raised, submitted for determination, and actually de-

termined in the first action, *Sunnen*, 333 U.S. at 601, 68 S.Ct. at 721, and the district court's ruling as to the '069 patent met none of these criteria, the ruling must be reversed.

### SUMMARY

The judgment that Rotron is collaterally estopped from asserting the '028 and the '069 patents in an infringement action against Nidec is reversed, and the case is remanded for further proceedings.

Costs are taxed in favor of Rotron.

*REVERSED AND REMANDED.*

RADER, Circuit Judge, concurring.

The New Jersey district court's use of the *Panduit* test was not "essential to the judgment" below. Therefore, as this court correctly notes, collateral estoppel did not compel the Connecticut district court to grant Nidec summary judgment. I write separately to underscore the implications of the *Panduit* test in this setting.

### I.

To invoke collateral estoppel, a defendant must show that the prior action: (1) decided the identical issue; (2) actually litigated that issue; (3) afforded the plaintiff a full and fair opportunity to litigate the issue; and (4) resolved the issue as an essential step in reaching final judgment. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702, 218 USPQ 965, 967 (Fed.Cir.1983). Nidec did not make this showing in the Connecticut action.

### II.

First, the issue of Nidec's infringement arose in the New Jersey and Connecticut actions in two entirely different contexts, with two different patents. In New Jersey, the court did not perform an infringement analysis at all, but merely determined whether Nidec made acceptable non-infringing products in a damages analysis. The Special Master passingly discussed infringement of the '028 patent to set damages. The Special Master did not perform an infringement

analysis to determine liability. In Connecticut, the district court assessed infringement to determine liability. Each court assessed infringement differently for a different reason.

Furthermore, the New Jersey decision concerning the claims of the '028 patent cannot bar a later suit on the separate and distinct claims of the '069 patent. "[I]nfringement must be decided with respect to each asserted claim as a separate entity." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1559, 220 USPQ 303, 318 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). The issues in the New Jersey and Connecticut actions were hardly similar, let alone identical.

Second, the New Jersey court did not actually litigate the issue of whether Nidec infringed Rotron's patents. In fact, the Special Master did not purport to make a formal finding of infringement. At no point did the New Jersey court interpret the claims or apply them to Nidec's "accused device." Therefore, the Special Master's findings in the New Jersey action did not "actually litigate" the infringement issue as required for collateral estoppel.

Third, Rotron had no opportunity to litigate fully the issue of infringement in the New Jersey action. For instance, Rotron received no opportunity to obtain discovery from Nidec in New Jersey. *Cf. Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331 n. 15, 99 S.Ct. 645, 651 n. 15, 58 L.Ed.2d 552 (1979). Furthermore the New Jersey court had no subpoena power over Nidec (of Connecticut) and Nippon Densan (of Japan). No representatives from Nidec or Nippon Densan appeared as witnesses in the New Jersey action. Therefore, Rotron did not have a full and fair opportunity to litigate the issue of Nidec's infringement in the New Jersey action.

Fourth, the issue of Nidec's alleged infringement of the '028 patent was not essential to the Special Master's finding in the New Jersey case. The Special Master simply determined the existence of acceptable non-infringing alternatives to Rotron's '028 rotor as required by the *Panduit* test for lost profits.[1]

The *Panduit* test itself is merely "an acceptable, though *not an exclusive*" test for determining "but for" causation as to lost profits. *BIC Leisure Prods. Inc. v. Windsurfing Intern. Inc.,* 1 F.3d 1214, 1218, 27 USPQ2d 1671, 1674 (Fed.Cir.1993) (emphasis added); *accord State Indus., Inc. v. Mor-Flor Indus., Inc.,* 883 F.2d 1573, 1577, 12 USPQ2d 1026, 1028 (Fed.Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990). This court acknowledges alternative methods of proving damages. For instance, under a market share approach for calculating lost profits, a factfinder may properly award lost profits if the patentee shows an established market share in lieu of the absence of non-infringing alternatives. *State Indus.,* 883 F.2d at 1580. Thus, with alternative ways of proving causation for lost profits, the New Jersey ruling was not essential to proving damages in that case.

Finally, and perhaps most important, before applying the *Panduit* test, a court must determine whether the accused device competes with the patentee's product in the marketplace. If not, the court should not employ the *Panduit* test. The New Jersey and Connecticut courts did not determine whether Rotron's and Nidec's products competed in the same market.

The first *Panduit* factor—demand for the patented product—presupposes that demand for the accused and patented products is interchangeable. However, if the products are not sufficiently similar—in terms of price, product characteristics, and marketing channels—to compete for the same customers, the infringer's customers will not necessarily transfer their demand to the patentee's product in the absence of the infringing product. *See BIC,* 1 F.3d at 1218–19.

---

1. *Panduit* requires the patentee to prove: (1) a demand for the patented product; (2) the absence of acceptable, noninfringing substitutes; (3) the patentee's capacity to exploit the demand; and (4) the profits he would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156, 197 USPQ 726, 720–30 (6th Cir. 1978).

The second *Panduit* factor—absence of acceptable, noninfringing alternatives—also presupposes that the patentee and the infringer compete for the same customers. *Cf. Yarway Corp. v. Eur–Control USA, Inc.,* 775 F.2d 268, 276, 227 USPQ 352, 357 (Fed.Cir. 1985). However, if the products do not compete in the same market niche, the second *Panduit* factor will also frustrate the "but for" test for causation.

Neither the New Jersey nor the Connecticut court analyzed whether Nidec's and Rotron's products compete for the same customers. Thus, neither court conducted the fact-intensive economic inquiry that must precede use of the *Panduit* test.