Gayle SHIELDS, Plaintiff,

v.

**READER'S DIGEST ASSOCIATION,
et al., Defendant.**

No. 99–72555.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 31, 2001.

Shields' claims are barred by the doctrine of collateral estoppel.[2] In response, she contends that the instant claim is not precluded by collateral estoppel because, among other things, (1) there has not been any prior proceeding which involved her claims against the Defendants, (2) the parties in this lawsuit are neither the same entities nor in privity with each other, and (3) a resolution of the issue of whether the disputed waiver had been properly notarized was not essential to the outcome of the prior case.

For the reasons that have been set forth below, the Court will grant the Defendants' motion for summary judgment.

I.

On January 1, 1998, Joseph R. Shields[3] retired from his employment with QSP, Inc., a subsidiary of the Reader's Digest Association, Inc. ("Reader's Digest"). Approximately five months later (May 17, 1998), he died, leaving his widow and an adult son as his surviving heirs. Acting on the assumption that she, as the surviving spouse, was entitled to receive the benefits from her deceased husband's retirement plan, Mrs. Shields submitted an application for payment to his former employer. When her request was rejected, this lawsuit followed. The Court subsequently severed Mrs. Shields' claims against one of the Defendants, Readers Digest, from her charges against Standard Federal and D'Alessandro for the purposes of trial, citing possible juror confusion in the presentation of evidence.

Donald R. Bachand, III, Bloomsfield Hills, MI, for Plaintiff.

Katherine M. White, Detroit, MI, for Defendant.

### ORDER

JULIAN ABELE COOK, Jr., District Judge.

This lawsuit concerns a claim by the Plaintiff, Gayle Shields, who asserts that the waiver on her deceased husband's pension benefit form was fraudulently and/or negligently notarized by the Defendants, Robert D'Alessandro[1] and Standard Federal Bank ("Standard Federal").

On July 11, 2001, the Defendants filed a motion for the entry of a summary judgment, in which they contend that Mrs.

1. Robert D'Alessandro is the notary public officer who notarized the waiver in question. At the time of the contested notarization, he was employed by Standard Federal. Mrs. Shields has sued Standard Federal under the principle of *respondeat superior*.

2. The Defendants' motion was scheduled for a hearing on October 23, 2001. However, the parties waived their oral arguments and agreed to submit the issues in dispute to the Court on their briefs.

3. Joseph R. Shields is the deceased husband of the Plaintiff, Gayle Shields.

On August 8, 2000 to August 10, 2000, a bench trial was conducted on Mrs. Shields' claims against Reader's Digest.[4] Following the filing of a Memorandum and Opinion on May 2, 2001, the Court entered a judgment in favor of Reader's Digest after concluding that Mrs. Shields was not entitled to receive any benefits under her deceased husband's retirement plan.

## II.

The Defendants bring their motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure which provides, in part, that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Supreme Court has held that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses. . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, the burden is on the Defendants, as the moving party, to demonstrate the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed.R.Civ.P. 56(c); see *United States v. Diebold, Inc.,* 369 U.S. 654, 655,

82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Hence, the Defendants can show that a genuine factual issue is lacking if they present evidence that is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, 106 S.Ct. 2505, or point to a failure by Mrs. Shields to present evidence that is "sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Upon such a showing, Mrs. Shields must act affirmatively to avoid the entry of a summary judgment against her. Fed.R.Civ.P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505, *quoted in Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

---

**4.** For purposes of clarity, the Court will identify Mrs. Shields' trial against Reader's Digest as "Shields I."

## III.

 It is the position of the Defendants that a summary judgment is appropriate because Mrs. Shields' claims are barred by the doctrine of collateral estoppel. Under the collateral estoppel doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The doctrine of collateral estoppel "reflects the longstanding policy that one full opportunity to litigate an issue is sufficient." *Hammer v. INS,* 195 F.3d 836, 840 (6th Cir.1999).

 A federal court, which exercises its federal question jurisdiction over an issue, must look to the federal law on those matters involving collateral estoppel in order to determine if there is any preclusive effect of a prior federal judgment. *See Tri–Med Finance Co. v. National Century Financial Enterprises, Inc.,* Nos. 98–3617 and 99–3062, 2000 WL 282445 at *9–10, 2000 U.S.App. LEXIS 3659, at *29–30 (6th Cir. Mar. 6, 2000), citing *J.Z.G. Resources, Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 213 (6th Cir.1996). The Court of Appeals for the Sixth Circuit has held that collateral estoppel will apply only when the following conditions are met:

(1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation,

(2) the issue was actually litigated and decided in the prior action,

(3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,

(4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and

(5) the party to be estopped had a full and fair opportunity to litigate the issue. *Hammer,* 195 F.3d at 840. *See also Hickman v. Commissioner,* 183 F.3d 535, 537 (6th Cir.1999). In an effort to evaluate the applicability, if any, of the Defendants' assertion of the collateral estoppel doctrine, the Court will examine the five *Hammer* conditions seriately.

1. *The issues in the current litigation are identical to that resolved in the earlier litigation.*

The issues in the current litigation-whether Mrs. Shields actually signed the waiver, and whether the challenged notarization was proper-were resolved in Shields I. In addressing the evidence that was produced by the parties during the first bench trial, the Court concluded that "(1) the waiver was validly signed by [Shields] and notarized by D'Alessandro." Court Opinion at 23. Thus, the issue in the current litigation was identical to that which was resolved in Shields I.

2. *The issue of the propriety and validity of the notarization of the waiver was raised and actually litigated in the prior proceeding.*

 The second requirement for the application of collateral estoppel is that the precise issue in the present case must have been raised and actually litigated in an earlier proceeding. In the instant case, the relevant issue is whether notarization of Mrs. Shields' signature on the pension benefits waiver form was valid and proper. In order to prevail on her claim of fraudulent and/or negligent notarization, Mrs. Shields must demonstrate that Standard Federal or D'Alessandro knowingly and improperly notarized the waiver form. *People ex rel. Curtiss v. Colby,* 39 Mich. 456 (1878). The standard of review, which is to be applied to a notary public, is that of the reasonable person. *See Manufac-*

*turers Acceptance Corp. v. Vaughn*, 43 Tenn.App. 9, 29–30, 305 S.W.2d 513, 522 (1956) ("[i]n the absence of statute, a notary is held to the care and diligence of a reasonably prudent man to ascertain the acknowledger's identity, but is not an insurer of the truth of the recitals") (quoting *Figuers v. Fly*, 137 Tenn. 358, 369, 193 S.W. 117, 120 (1917)).

The issues of whether Mrs. Shields signed the waiver and if it was properly notarized were raised and litigated in Shields I. In that action, Mrs. Shields asserted that (1) she had never signed the purported waiver and (2) her signature had been falsely notarized by Mr. D'Alessandro during his employment tenure with Standard Federal. Final Pre–Trial Order at 3–4. During the Shields I trial, Mrs. Shields reiterated her earlier contention; namely, that she neither signed the benefits waiver nor authorized it to be notarized. Trial Transcript, Aug. 10, 2000 at 28–30. In its Memorandum Opinion and Order, the Court specifically rejected her argument, finding the waiver had been "validly signed by [Mrs.]Shields and notarized by [Mr.] D'Alessandro." Opinion at 23. Thus, the issue of the validity and propriety of the notarization on the waiver form was raised and litigated in a prior proceeding (i.e., Shields I).

Mrs. Shields also argues that Shields I was not a "prior proceeding" within the context of collateral estoppel. The Defendants disagree. However, neither party has cited any authority that is persuasive or instructive to the Court.[5]

It appears that the federal courts have not dealt with the issue of what constitutes a "prior proceeding" within the requirements for collateral estoppel. However, a reading of an interpretation of the function of collateral estoppel is helpful. In *Parklane Hosiery v. Shore*, the Supreme Court held that "[p]ermitting repeated litigation for the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the parts of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'" 439 U.S. 322, 328, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), quoting *Kerotest Mfg. Co. v. C-O-Two Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Given this interpretation of the function of collateral estoppel, the Court has given literal interpretation of the term, "prior proceeding" to mean a proceeding that has taken place before the current proceeding. As such, the trial in Shields I constitutes a "prior proceeding" to the instant action, which satisfies the second requirement of collateral estoppel.

3. *The determination of the issue of the notarization's propriety and authenticity was necessary to the outcome of the Reader's Digest trial.*

The third requirement for the application of collateral estoppel is that the relevant issue must have been necessary to the outcome of the prior proceeding. The Defendants maintain that the validity of the notarization was at "[t]he heart of Mrs. Shields' claim" against Reader's Digest

---

**5.** Mrs. Shields cites *Barrow v. Pritchard*, 235 Mich.App. 478, 480, 597 N.W.2d 853 (1999) ("collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties"), whereas the Defendants cite *Rosenfeld, Meyer & Susman v. Cohen*, 191 Cal.App.3d 1035, 237 Cal. Rptr. 14, 20 (1987) (discussing a line of state

cases that "allow a court to treat an issue tried and resolved in a trial on severed issues as determinative of facts that bear on remaining issues to be tried"). Neither citation is instructive for the Court because both cited authorities rely upon decisions of state courts regarding applicable state law, whereas this Court is guided in this issue by federal law.

and thus it became necessary and essential to the outcome of the trial. Defendants' Brief at 4. Mrs. Shields challenges their argument, contending that this issue was not necessary to the finding by the Court that Reader's Digest did not act arbitrarily and capriciously with regard to Shields' claim. Plaintiff's Response at 5–6.

One federal court, in addressing this requirement of collateral estoppel, has held that a reviewing court should consider the totality of the circumstances as well as the relationship between the prior proceeding and the current action. *Masco Corp. v. United States,* 49 Fed.Cl. 337, 343–44 (2001) ("in determining whether preclusive effect should be given to the issues at hand, the Court looks to the totality of the circumstances, including the relationship of the issue to the judgment (whether it is a material issue or is merely dicta) and the relationship between the prior proceeding and the present action before the Court (such as considerations of judicial economy 'and fairness) to determine whether an issue is truly necessary to the judgment"). The Court of Appeals for the Sixth Circuit has also determined that an issue is not "necessary and essential" to a prior judgment if there existed alternative bases for arriving at the first judgment. *United States v. Smith, et al.,* 730 F.2d 1052, 1056 (6th Cir.1984).

A review of the record in this case reveals that the issue of the authenticity of Mrs. Shields' purported waiver was "necessary and essential" to the decision by the Court in Shields I. In fact, it was Mrs. Shields who argued that she had never signed the waiver in question in order to establish her claim of arbitrary and capricious conduct by Reader's Digest. Her position in the first trial was that Reader's Digest had acted arbitrarily and capriciously when it denied her request for pension benefits on the basis of a waiver that she never signed. Final Pre–Trial Order at 3. To support this argument, Mrs. Shields testified that she never signed the benefits waiver or had it notarized. Trial Transcript of Aug. 10, 2000 at 28–30.

In its Memorandum Opinion and Order relating to Shields I, this Court found that it was "unable to find any actions or omissions by Reader's Digest, its agents or subdivisions that can be characterized as having been committed in an arbitrary or capricious manner." Opinion at 18. The Court also rejected Mrs. Shields' contention that the waiver was forged, and concluded that the waiver was valid. *Id.* at 18–19. The Court thus concluded that "since (1) the waiver was validly signed by [Mrs. Shields] and notarized by D'Alessandro and (2) the waiver was not defective due to issues relating to the timeliness of its submission ... [Mrs. Shields] waived her right to receive any benefits as a survivor to her deceased husband under the plan." *Id.* at 23.

Thus, it is apparent to the Court that Mrs. Shields rendered the issue of the validity of the waiver to be "necessary and essential" to an assessment of the facts in Shields I by the Court when she attempted to establish that the waiver document was legally invalid. Mrs. Shields, in arguing that Reader's Digest had acted arbitrarily and capriciously by denying benefits to her on the basis of a waiver that she did not sign, introduced this issue (i.e., whether she actually signed the waiver) into the first trial.[6] The Court rejected her argument at that time, and must do so once

---

**6.** Arguably, if Mrs. Shields' had stipulated in the first trial that Reader's Digest reasonably relied on a facially valid waiver on the basis of its notarization, the instant question may have reached a different conclusion because the issue of whether the document had been properly signed and notarized would not have been introduced.

again. Moreover, concerns of fairness and judicial economy dictate that Mrs. Shields should not be given a second opportunity to advance an argument she failed to establish on the first attempt.

4. *Shields was a party to the prior litigation.*

The fourth requirement for the application of collateral estoppel is that the party to be estopped must be a party to the prior litigation (or in privity with such a party). The Defendants assert that this requirement has been satisfied because Mrs. Shields was a party to both actions. Defendants' Brief at 2–3. In response, Mrs. Shields, in citing a case from the Michigan Supreme Court to support her argument that "only parties to the former judgment or their privies may take advantage of collateral estoppel," insists the adoption of the collateral estoppel doctrine in this case would be inappropriate because the Defendants in Shields I and the instant cause are not the same parties.

Mrs. Shields' argument is without merit because it (1) relies upon state authority, and (2) articulates the incorrect principle of law. In this case, the party to be estopped is Mrs. Shields, who was a party to the Reader's Digest trial. As a result, this requirement of collateral estoppel is met because Mrs. Shields is a party to both actions.

5. *Mrs. Shields had a full and fair opportunity to litigate the issue.*

The final requirement for the application of collateral estoppel doctrine is that the party to be estopped must have had a full and fair opportunity to litigate the issue in the prior proceeding. Determining whether a party has had a "full and fair" opportunity to litigate an issue is necessarily a discretionary exercise. However, the Supreme Court has held that "no one set

of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity." *Blonder–Tongue Lab. v. University of Illinois Found.*, 402 U.S. 313, 333–34, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

Neither party discusses this requirement in its briefs, but it is apparent that Mrs. Shields did have a "full and fair opportunity" to litigate the issue of the authenticity and validity of the waiver. The record clearly indicates that Mrs. Shields was (1) a party to the prior litigation, and (2) the party who introduced the issue of the validity of the waiver into the first trial. It was in her interest to fully litigate this issue because it would have bolstered her claim against Reader's Digest. Inasmuch as Shields had every opportunity to litigate the issue of the validity of the signatures on the waiver form, this requirement of collateral estoppel has been met.

## IV.

The Defendants have met all five requirements for the application of collateral estoppel. Furthermore, the Defendants have met their burden of demonstrating that there are no genuine issues of material fact in dispute. The parties claim no differences of material fact, and there are indeed no genuine issues of material fact. Based on the record, it is unlikely that a reasonable jury would find for Mrs. Shields in this case because the evidence suggests (and this Court has held) that the waiver in question was authentic and legitimate. Furthermore, she has not introduced any credible evidence to support her argument that the application of the collateral estoppel doctrine would be inappropriate in this case.

For the above reasons, the Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.